**TEXAS DEPARTMENT OF HUMAN SERVICES et al., Petitioner,**

v.

**William S. BOYD, Respondent.**

**No. C–5877.**

Supreme Court of Texas.

April 8, 1987.

Richard L. Crozier and Ann S. Taylor, Hearne, Knolle, Lewallen, Livingston & Holcomb, J. Patrick Wiseman, Attorney General's Office, Don Kay, Texas Dept. of Human Services, from Austin, for petitioner.

Hal Hemstreet, Texas Dept. of Corrections, Sugar Land, R. Stephen Tompkins, Legal Aid Society of Central Texas, Austin, for respondent.

ROBERTSON, Justice.

This is an action to terminate the parent-child relationship between the biological father, William Swanson Boyd, and his minor child. Suit was instituted by the Texas Department of Human Resources after the child's natural mother, Barbara Arriola, signed an irrevocable affidavit of relinquishment of her parental rights. Boyd was served with process and entered an appearance in the case and cross-petitioned for legitimation. Prior to trial of this cause but after execution of the affidavit of relinquishment, Barbara Arriola consented to legitimation of the child as to Boyd. The trial court rendered its order legitimating the child, terminating the mother's parental rights based upon her execution of the irrevocable affidavit of relinquishment[1], and terminating the father's parental rights based upon a finding under section 15.02(1)(E), TEX. FAM. CODE ANN. (Vernon's 1986), that Boyd had engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child.[2] The court of appeals reversed the trial court and rendered judgment that the Texas Department of Human Resources take nothing by its suit seeking to terminate Boyd's parental rights. 715 S.W.2d 711. We reverse the judgment of the court of appeals and remand this cause to that court for further consideration.

Boyd and Arriola began living together in approximately February 1981 but were

---

1. The trial court's order terminating the mother's parental rights has not been appealed and that part of the order has become final.

2. Section 15.02(1)(E) was the only provision of section 15.02 alleged against Boyd by the Department of Human Resources.

never married. On April 4, 1982, Boyd was arrested and jailed for burglary. Two days later Arriola gave birth to a daughter. Boyd saw the child for the first time eight months later when he was paroled from his burglary conviction on December 23, 1982. After his parole, Boyd lived with Arriola until early June 1983, approximately five months. They then separated. In October 1983, Boyd was again arrested and jailed for burglary and he is currently serving a five-year sentence in the Texas Department of Corrections. During the short period of time that Boyd was out on parole, he intermittently held three different jobs. The evidence is vague, at best, as to the nature and amount of support he provided the child.

Barbara Arriola first contacted the Department of Human Resources in June 1983 concerning problems she was having caring for the child. No action was taken by the Department at that time. Barbara contacted the Department for the second time in January 1984 and indicated that she wished to place the child for adoption because she could no longer afford to take care of the child. At the time the child was taken into custody by the Department, she was experiencing emotional problems including sleep disorders, dietary and bedwetting problems, and temper tantrums.

▄▄▄ Under section 15.02, TEX. FAM. CODE ANN. (Vernon's 1986), termination of a parent-child relationship may not be based solely upon what the trial court determines to be the best interest of the child. *Holley v. Adams,* 544 S.W.2d 367 (Tex.1976). In *Wiley v. Spratlin,* 543 S.W.2d 349, 351 (Tex.1976), this court wrote:

> Subdivision (1) of [section 15.02] lists several acts or omissions, one or more of which must be proved in a termination case.... Subdivision (2) of the same Section requires proof of a second element, that the termination is in the best interest of the child. Both elements must be established and the requirements of Subdivision (1) are not excused because a court may be of the opinion that Subdivision (2) has been proved.

Based upon its interpretation of section 15.02(1)(E), the court of appeals held that there was no evidence, or alternatively that the evidence was less than clear and convincing, that Boyd had endangered the emotional or physical well-being of the child. That section provides for termination of the parent-child relationship if the court finds that the parent has:

> (E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child.

The court of appeals stated that the word "endanger" as used in the statute actually meant "danger" and defined "danger" as an "actual and concrete threat of *injury* to the child's emotional or physical well-being." 715 S.W.2d at 715. The court of appeals further held that the " 'danger' must be established as an independent proposition and is not inferrable alone from parental misconduct." 715 S.W.2d 715. We decline to adopt the interpretation placed on section 15.02(1)(E) by the court of appeals and expressly disapprove both its definition of "danger" and its holding that danger cannot be inferred from parental misconduct. While we agree that "endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Allred v. Harris County Child Welfare Unit,* 615 S.W.2d 803, 806 (Tex. Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). Rather, "endanger" means to expose to loss or injury; to jeopardize. *Webster's New Twentieth Century Dictionary of the English Language* 599 (1976), and imprisonment is certainly a factor to be considered by the trial court on the issue of endangerment.

▄▄▄ Texas cases have considered the involunary termination of the rights of an imprisoned parent, and have held that mere imprisonment will not, standing alone, constitute engaging in conduct which endangers the emotional or physical well-being of a child. *See, e.g., Wray v. Lenderman,*

640 S.W.2d 68 (Tex.App.—Tyler 1982, writ ref'd n.r.e.); *In the Interest of Guillory*, 618 S.W.2d 948 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Crawford v. Crawford*, 569 S.W.2d 505, 507 (Tex.Civ. App.—San Antonio 1978, no writ). It is at this point, however, that the courts of appeals part company on the effect of a parent's imprisonment. We hold that if the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child, a finding under section 15.02(1)(E) is supportable. *Wray* at 71.

Since we hold that the court of appeals incorrectly interpreted section 15.02(1)(E), we reverse the judgment of the court of appeals and remand this cause to that court for their determination of whether the State met its burden of proving by clear and convincing evidence that Boyd engaged in conduct which endangered the physical or emotional well-being of the child.