**Lisa ROBINSON, Appellant,**

v.

**TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES, Appellee.**

**No. 01–01–00754–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Sept. 30, 2002.

Anna E. Stool, Houston, for Appellant.

Sandra D. Hachem, Assistant County Attorney, Houston, for Appellee.

Panel consists of Justices TAFT and RADACK.*

## OPINION

SHERRY J. RADACK, Justice.

This is an appeal from the trial court's decree that terminated appellant Lisa Robinson's parental rights to her children, A.C.I. and A.L.I. The trial court found: (1) termination was in the best interest of the children;[1] and (2) appellant (a) "knowingly placed or knowingly allowed the children to remain in conditions or surroundings

---

* This case was submitted to a panel consisting of Justices Taft, Radack, and former Chief Justice Michael H. Schneider. Chief Justice Schneider however resigned from the court on September 6, 2002, to assume a position as Justice on the Texas Supreme Court, and did not participate in this opinion.

1. Tex. Fam.Code Ann. § 161.001(2) (Vernon Supp.2002).

which endanger the physical or emotional well-being of the children" [2] and/or (b) "engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children." [3] Appellant challenges the factual sufficiency of the evidence. We affirm.

## Facts

In January 2000, appellant's children came into the care of the Texas Department of Protective and Regulatory Services (TDPRS) because appellant was arrested for possession of less than one gram of cocaine. For the offense, appellant received deferred adjudication community supervision for three years. In January 2001, appellant tested positive for cocaine and, at that time, was pregnant. A motion to adjudicate guilt was filed against appellant in February 2001, for failure to comply with various terms of her community supervision. The trial court adjudicated her guilty, and she was incarcerated for three months, from March 8, 2001, until the time of trial, May 9, 2001.

After her initial release from jail in January 2000, appellant, who had been served with pleadings filed by TDPRS, contacted a TDPRS caseworker assigned to her children's case and signed a Family Service Plan (the Plan). In the Plan, she agreed to avoid criminal activity, comply with community supervision requirements, complete drug tests, take parenting classes, undergo drug and psychological evaluations, complete individual counseling, and find employment and a suitable home. TDPRS agreed to arrange and pay for these services. Before TDPRS acted, appellant independently arranged for services at the Fort Bend's Women's Center

(the Center). Acting for appellant, the Center made the appropriate referrals.

To comply with the Plan, appellant took parenting classes, met with individual counselors, and attended group-therapy sessions. Appellant provided certification to TDPRS of her completion of parenting classes, anger-management classes, and her general equivalency diploma. During this time, appellant worked as a bartender, but this was a job prohibited by the terms of her community supervision. In August 2000, appellant entered Riverside Hospital's sobriety treatment program, where she remained for 30 days.

Between January 2000, and the time of trial in May 2001, appellant had signed up for, been accepted into, but had not yet attended, the following programs: (1) Project Support at the University of Houston (in-home counseling for appellant and her children upon their return home); (2) Texas Rehabilitation Program (unspecified training program); (3) Santa Maria Hostel Program (90 day intensive treatment program); and (4) an unspecified long-term, supervised transitional-living program, where appellant could live with her children, obtain more education and job skills, and receive drug after-care therapy for herself and her children.

Appellant admitted to a long history of intermittent cocaine use and understood that she had a disease. Appellant testified she has used various types of illegal drugs, namely marihuana and cocaine, throughout her life. Her most recent use of cocaine was in January 2001, about four months before trial. Appellant also testified to using cocaine during the last seven or eight years while on different medications

---

**2.** TEX. FAM.CODE ANN. § 161.001(1)(D) (Vernon Supp.2002).

**3.** TEX. FAM.CODE ANN. § 161.001(1)(E) (Vernon Supp.2002).

for a bipolar condition.[4] Appellant testified her son failed first grade because of excessive absences.

Appellant lived with Daniel Iaccio, the children's father, until 1997 or 1998, when he was incarcerated for a drug conviction. Appellant testified Iaccio was a good parent, but admitted the two got high on cocaine together. Iaccio also testified at trial.

Iaccio admitted to a long-term drug problem dating back to 1988. He also has a criminal history, including a 1995 conviction for burglary and a 1998 conviction for possession of cocaine. He testified that one of the ways that he supported the family was by selling drugs. He stated he believed appellant was a good mother. Nevertheless, he also observed that the children were afraid of appellant, that she had a temper, and that the children "need to worry a little bit." He testified as follows:

Q: Have you ever known either of these children to be afraid of their mother?

A: For a little while. She's got a temper. But she's a good mom.

Q: Was it ever directed against them or was it just frustrated [sic]?

A: No. She's not going to hurt them. You understand what I'm saying. She's not going to hurt them. Granted they need to worry a little bit. She's not going to hurt them though. She's a good mom. She's [sic] kept her house clean. She's always provided for them, that I can say. The kids never go hungry and

that thing in the—I ain't gonna get in it. I know for a fact, while I was in prison, she took care of the kids. And I know what happened on her cocaine charge.

Regarding her drug use, appellant stated that her problems with drugs ceased two months before the trial of this case when, on March 5, 2001, she became part of a close group, the Western Club,[5] and turned her life over to God. However, despite the services provided to address her drug problem, appellant admitted she continued to use cocaine and that she had used cocaine as recently as January 2001. Appellant also admitted that, while on community supervision, she could have tested positive for drugs during July, August, or September of 2000. She testified as follows:

Q: And did you ever test positive to those random UAs?[6]

A: I didn't receive that information.

Q: So you're not certain just because it hasn't been confirmed or denied, is that what you are saying?

A: Yes.

Q: Given your situation and not necessarily knowing the results, if you would have had the results do you believe any of them would have come back positive?

A: Yes.

Q: And what type of time frame are we talking about [sic] there is a possibility that it could of [sic] back positive?

---

4. After those seven or eight years, appellant's daughter, A.L.I., would have been around eight, and her son, A.C.I., would have been in first grade.

5. According to the record, there appears to be no relation between the Western Club and the

two churches who purportedly assisted appellant with a down payment on her condominium.

6. A UA is the abbreviated form of urinary analysis.

A: August or September–August, July or August, the end of July the first of August.

Q: Of 2000?

A. Yes, ma'am.

Q: And we also know that the last time you used was January 2001, is that correct?

A: Yes.

Appellant further cannot explain why she had problems with drug use four months prior to trial. She testified:

TDPRS'S COUNSEL: Ms. Robinson, can you tell the Court if you knew the entire time the agency was trying to work with you in getting your children reunited with you and one of the biggest issues of concern they had with you is your cocaine usage, why would you continue to use while your children were in care?

APPELLANT: I put myself in rehab in January.

TDPRS'S COUNSEL: Objection non-responsive.

THE COURT: That's sustained.

APPELLANT'S COUNSEL: Your Honor, she's trying to answer her question by showing what she did and trying to deal with it.

THE COURT: The question was: If your children were picked up because of cocaine usage, why would you continue to use cocaine? Is that the question?

TDPRS'S COUNSEL: Yes.

THE COURT: Why would you continue to use cocaine as late as January of 2001?

APPELLANT: I didn't continue to use because it was-it's not actually a cut and dry choice.

TDPRS'S COUNSEL: But you made a choice to continue to use drugs.

APPELLANT: I don't know how to answer that.

TDPRS'S COUNSEL: Objection.

APPELLANT'S COUNSEL: Your Honor, she's answered it to the best of her ability.

THE COURT: Okay, Ma'am do you remember I said if you don't know you can say you don't know.

APPELLANT: Okay, I don't know.

When asked about the impact of her drug use on her children, appellant testified:

Q: Do you believe that's conduct on your part that endangered the physical and emotional well-being of your children?

A: No, I do not.

Q: So you being arrested for drug possession and used [sic] and your children being taken into custody, that's an okay lifestyle for them to live and have to go through that?

A: No, it is not.

Q: Just for clarification. It's okay for a parent to use drugs and that's okay for the kids to be around those type of surroundings?

A: No, it is not.

Regarding her future plans for herself and her children, appellant stated that the Center and two churches assisted her in making a down payment toward a condominium, which she bought in April, 2000.[7] Appellant stated she would live in the condo once out of jail. However, appellant admitted that no one had paid the mortgage on her condo for the past three months [before trial]. In addition, appellant stated if the court did not terminate her parental rights, she did not expect to

---

7. Iaccio testified that the condo was not in a nice neighborhood.

have her children returned to her immediately. Although, at the time of trial, the children had been in TDPRS's possession for approximately 14 months, appellant indicated it would be in the children's best interest to remain in the care and custody of TDPRS for two years. When asked, appellant stated she did not think remaining in TDPRS's custody placed the children "in limbo."

Both children are currently placed with foster parents. Cassandra Daley, the children's TDPRS caseworker, stated both children have special needs. Both children are attending therapy and have follow-up medical evaluations once a month. A.C.I. has Tourette's Syndrome and is currently taking a mild form of medication. A.L.I. has been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD). The children's special needs are being currently met under the TDPRS's foster-care placement. Daley testified she did not think the parents could provide for the children. TDPRS searched for relatives who could care for the children, but none of the relatives found indicated they could care for the children. Daley admits that appellant loved her children and she made a good-faith effort to do her services. Daley was pleased that, even while incarcerated, appellant made an effort to address her drug addiction and provide for her children.

The children did not testify at trial; however, Daley testified that the children expressed to her they do not wish to return to their home. She testified as follows:

Q: Do you know what the children's wishes are?

A: Not to return home.

8. The Texas Legislature has codified several

After hearing all the evidence, the trial court ordered the termination of appellant's parental rights.

## Standard of Review

The termination of parental rights involves fundamental constitutional rights. *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972); *see also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex.1985). Evidence supporting the findings to terminate parental rights must be clear and convincing, not just preponderate. *In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex.1980); *Harris v. Herbers*, 838 S.W.2d 938, 941 (Tex.App.-Houston [1st Dist.] 1992, no writ). The clear and convincing standard of proof at trial is intentionally placed on the party seeking the termination of the parental rights, so as to create a higher burden to fulfill, due to the severity and permanence of the termination of the parent-child relationship. *Spurlock v. Tex. Dep't of Protective & Regulatory Servs.*, 904 S.W.2d 152, 155 (Tex.App.-Austin 1995, writ denied); *Harris*, 838 S.W.2d at 941. The clear and convincing standard is the degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be proved. *Harris*, 838 S.W.2d at 941. The Texas Supreme Court has recently clarified the appropriate standard of review that an appellate court must use to review the sufficiency of the evidence in parental termination cases. *In the interest of C.H.*, 45 Tex. Sup.Ct. J. 1000, 89 S.W.3d 17 (2002).

## Discussion

This proceeding was commenced under the provisions of section 161.001 of the Texas Family Code.[8] That section states

grounds upon which a court may involuntari-

the method by which a court may involuntarily terminate the parent-child relationship. TEX. FAM.CODE. ANN. art. 161.001 (Vernon Supp.2002). Under this section, a court may order the termination of the parent-child relationship if the court finds, by clear and convincing evidence, that: (1) one or more of the acts enumerated in section 161.001(1) was committed; and (2) termination is in the best interest of the child. TEX. FAM.CODE. ANN. art. 161.001(1) (Vernon Supp.2002); *See Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 1391, 71 L.Ed.2d 599 (1982); *Holick*, 685 S.W.2d at 20; *Richardson v. Green*, 677 S.W.2d 497, 499 (Tex.1984).

Here, the trial court terminated appellant's parental rights under section 161.001(1), finding by clear and convincing evidence that appellant had:

> (D) knowingly placed or knowingly allowed the children the subject of this appeal to remain in conditions or surroundings which endanger the physical or emotional well-being of the children; and

> (E) engaged in conduct or knowingly placed the children the subject of this appeal with persons who engaged in conduct which endanger the physical or emotional well-being of the children.

TEX. FAM.CODE. ANN. art. 161.001(1)(D) and (E) (Vernon Supp.2002).

### Family Code Section 161.001(1)(E)

In point of error one, appellant challenges the factual sufficiency of the two statutory grounds under which her rights were terminated. *See* TEX. FAM.CODE ANN. § 161.001(D), (E) (Vernon Supp.2002). We first examine whether the evidence is sufficient to show appellant endangered her children.

According to section 161.001(1)(E), "endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex.1987); *Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 394 (Tex.App.-El Paso 2000, pet. denied). While "endanger" means more than a "threat of metaphysical injury or the ill effects of a dysfunctional family," it does not require that the conduct be actually directed at a child or that a child suffer an actual injury. *Boyd*, 727 S.W.2d at 533. Under section 161.001(1)(E), the danger to a child must arise solely by the parent's conduct established by the parent's actions or by the parent's failure to act. *Doyle*, 16 S.W.3d at 394; *In re J.N.R.*, 982 S.W.2d 137, 142 (Tex.App.-Houston [1st Dist.] 1998, no pet.). Mere imprisonment will not, standing alone, constitute engaging in conduct that endangers the physical or emotional well-being of the child. *Boyd*, 727 S.W.2d at 533; *Harris*, 838 S.W.2d at 942. However, if all the evidence, including imprisonment, shows a course of conduct that has the effect of endangering the physical or emotional well-being of the child, a finding under section 161.001(1)(E) is supportable. *See Boyd*, 727 S.W.2d at 533–34; *Harris*, 838 S.W.2d at 942. The conduct need not be directed toward the children or cause the children physical injury to constitute conduct that endangers the emotional well-being of the child. *Allred v. Harris County Child Welfare Unit*, 615 S.W.2d 803, 806 (Tex.Civ.App.-Houston [1st Dist.] 1980, no writ).

We conclude that appellant's illegal drug activity, a violation of community su-

---

ly terminate the parent-child relationship. TEX. FAM.CODE. ANN. art. 161.001(1) (Vernon Supp.2002).

pervision after agreeing not to commit such acts in the Plan for reunification with her children, established clear and convincing proof of voluntary, deliberate, and conscious conduct that endangered the well-being of her children.

Our holding is consistent with the holding of the court in *In re J.N.R.* In that case, the father was also incarcerated when his child was born. After being released from prison, he agreed to a family service plan created by TDPRS. *In re J.N.R.,* 982 S.W.2d at 140. The plan required him to get a stable job and suitable home, follow his probation guidelines, complete drug tests, attend parenting classes, and develop a relationship with his child. The father then violated his parole, failed to complete drug testing, failed to complete parenting classes, and engaged in criminal activity, which resulted in more jail time, "knowing his parental rights were in jeopardy." *Id.* at 142. The court concluded in terminating the father's parental rights that, even after knowing his parental rights were in jeopardy, the defendant continued to engage in criminal activity that resulted in his being jailed.

■ Here, as in *J.N.R.,* appellant knew her parental rights were in jeopardy when she continued her illegal drug use. That appellant testified to her drug problems ceasing within two months before trial, does not controvert evidence that appellant's illegal drug activity has been ongoing for 20 years.[9]

■ Viewing all the evidence in the record, we conclude the evidence is factually sufficient to reasonably form a firm belief that appellant engaged in conduct that endangered her children's emotional well-being. Because we have concluded the evi-

dence is factually sufficient to support the trial court's findings under section 161.001(1)(E), we need not address the sufficiency of the evidence under section 161.001(1)(D). Only one finding alleged under section 161.001(1) is necessary for a judgment of termination. *In re S.F.,* 32 S.W.3d 318, 320 (Tex.App.-San Antonio 2000, no pet.).

We overrule point of error one.

### Best Interest of the Children

■ In point of error two, appellant challenges the factual sufficiency of the trial court's finding that termination would be in the best interest of the children. *See* TEX. FAM.CODE ANN. § 161.002 (Vernon Supp.2002). Some of the factors an appellate court may consider in ascertaining the best interest of a child include the nonexhaustive list set forth in *Holley v. Adams,* as the principal balancing factors used to determine the best interest of the children. *In re K.C.M.,* 4 S.W.3d 392, 394–95 (Tex. App.-Houston [1st Dist.] 1999, pet. denied) (quoting *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex.1976)). Those factors include: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for

---

9. Moreover, appellant's use of drugs during her recent pregnancy may be considered endangering a child. *See Dupree v. Tex. Dep't of*

*Protective & Regulatory Servs.,* 907 S.W.2d 81, 84 (Tex.App.-Dallas 1995, no writ).

the acts or omissions of the parent. *Id.* at 371–72.

These factors are not exhaustive. *In re C.H.*, 45 Tex. Sup.Ct. J. at 1006, 89 S.W.3d at 27. The absence of evidence about some of these facts does not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest. *Id.* We now review the sufficiency of the evidence to support the trial court's finding that it was in the best interest of the children to involuntarily terminate appellant's parental rights.

Here, there is strong evidence that appellant maintained a pattern and practice of using illegal drugs for over 20 years, both before her children were born, as well as during a recent pregnancy. This evidence over many years shows a pattern of behavior courts have looked to when determining whether termination should be upheld. *Avery v. State*, 963 S.W.2d 550, 553 (Tex.App.-Houston [1st Dist.] 1997, no writ) (conduct before and after birth of child is relevant in parental-termination cases). The evidence shows the programs appellant attended were insufficient to help her to act more responsibly or to stay off drugs.[10]

Regarding the provision of a stable environment for her children, appellant indicated two churches and the Center helped her buy a condo, but that she had not paid anything on that mortgage in the three months before trial. Appellant offered no evidence that she will have any resources to maintain the condo and provide a suitable home for the children.

The record reveals: (1) the children have expressed to Ms. Daley their desire not to return to home with their mother; (2) the children's father indicated the children have been frightened by appellant's temper, and that they have good reason for that fear; (3) both children have special needs and are attending therapy and have follow-up medical evaluations once a month as provided by TDPRS; (4) both children's special needs are being currently met under the TDPRS's foster-care placement; and (5) Daley testified that, in her opinion, appellant could not meet the special needs of the children.

Appellant cites *In re K.C.M.*, 4 S.W.3d 392 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) for the proposition that this Court reversed a termination on factual sufficiency grounds on almost identical facts. We disagree.

In *K.C.M.* the evidence showed the mother had been incarcerated for one year due to a drug conviction, affirmatively tried to address her drug problem, undertook many affirmative acts, including completing parenting classes, a Life Skills course, a career course, GED courses, and anticipated being released shortly after trial. *Id.* at 396. Unlike *K.C.M.*, appellant was out of prison during the year before trial on deferred adjudication, but failed to stay off drugs.

Although appellant has participated in various programs, she has failed to make positive strides. Here, appellant's counseling has not altered her behavior. Appellant admitted to illegal drug activity as recently as four months before trial, in violation of her community supervision and the Plan. We find *K.C.M.* distinguishable from the facts in this case.

Appellant has used drugs for over 20 years, and in combination with medication prescribed to address her psychiatric con-

---

**10.** Despite the parenting and drug programs, appellant admitted she continued to use drugs, even during a recent pregnancy.

dition in the last seven or eight years. She admitted that her son failed first grade because of excessive absences. In light of these facts, we conclude the evidence was sufficiently clear and convincing such that a factfinder could reasonably form a firm belief that termination of appellant's parental rights would be in the best interest of the children.

We overrule point of error two.

## Conclusion

We affirm the trial court's decree.