Affirmed and Memorandum Opinion filed September 4, 2003









Affirmed
and Memorandum Opinion filed September 4, 2003.

 

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00973-CV

____________

 

IN THE INTEREST OF M.T. AND A.A.

 

 



 

On Appeal from the 315th District Court

Harris County, Texas

Trial Court Cause No. 01-06090J

 



 

M E M O R A N D
U M   O P I N I O N








This is an appeal from a decree terminating
the parental rights of appellant Shumeki Ason[1] to
her daughters, M.T. and A.A.[2]  The jury found by clear and convincing
evidence, under broad form submission, that: 
(1) termination of the parent-child relationship was in the best
interests of M.T. and A.A.;[3]
and that (2) Ms. Ason violated three grounds for
termination[4]
under section 161.001(1) of the Family Code.[5]  We affirm.

Background

Believing
M.T. and A.A. had been the victims of sexual abuse and that continuation of the
children in the home would endanger their welfare, with a substantial risk the
abuse would occur again, the TDPRS removed M.T. and A.A. from Ms. Ason=s home.  Believing that
returning the children to the home of Ms. Ason was
not in their best interests, the TDPRS petitioned for termination of Ms. Ason=s parental rights to her children as well as termination of
the parental rights of each girl=s father.  Following a jury trial, Ms. Ason=s (as well as each father=s) parental rights to M.T. and A.A.
were terminated.  Ms. Ason
filed this appeal.  

                                                                       Issues

In her
first point of error, Ms. Ason argues there was no
evidence or insufficient evidence to establish by clear and convincing evidence
the jury=s finding that she knowingly placed
or allowed the children to remain in conditions or surroundings that endangered
their physical or emotional well-being, an act listed in the Family Code as
grounds for termination.  See Tex. Fam. Code Ann. ' 161.001(1)(D)
(Vernon 2002).  In her second point of
error, Ms. Ason argues there was no evidence or
insufficient evidence to establish by clear and convincing evidence the jury=s finding that termination of her
parental rights is in the best interests of M.T. and A.A., as required for
termination under the Family Code.  See
Tex. Fam. Code Ann. ' 161.001(2) (Vernon 2002).

 








Standard of Review

In proceedings to terminate the parent‑child
relationship brought under section 161.001 of the Family Code, the petitioner
must establish one or more of the acts or omissions enumerated under
subdivision (1) of the statute and must also prove that termination is in the
best interests of the child.  Tex. Fam. Code Ann. ' 161.001; Richardson v. Green, 677 S.W.2d
497, 499 (Tex. 1984). 
Both elements must be established; termination may not be based solely
on the best interests of the child as determined by the trier
of fact. Tex. Dep=t of Human Servs.
v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). 
Evidence supporting findings in termination proceedings must be clear
and convincing, not just preponderate; the clear and convincing standard of
proof at trial is intentionally placed on the party seeking the termination of
parental rights, due to the severity and permanence of the termination of the
parent‑child relationship.  In re C.H., 89 S.W.3d 17, 23 (Tex.
2002).  The clear and
convincing standard needed to support termination of parental rights is the
degree of proof that will produce in the mind of the trier
of fact a firm belief or conviction as to the truth of the allegations sought
to be proved.  Id.  While the proof under this standard must be
more than merely the greater weight of the credible evidence, there is no
requirement that the evidence be unequivocal or undisputed.  State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979).

When, as here, a party without the burden of
proof challenges the legal sufficiency of the evidence, we will sustain the
challenge only if, considering the evidence and inferences in the light most
favorable to the finding, there is not more than a scintilla of evidence
supporting it.  See Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 499 (Tex. 1995); In re B.M.R., 84 S.W.3d 814, 817 (Tex. App.CHouston
[1st Dist.] 2002, no pet.).  AMore than a scintilla of
evidence exists where the evidence supporting the finding, as a whole, >rises to a level that would
enable reasonable and fair‑minded people to differ in their conclusions.=@ Burroughs
Wellcome, 907 S.W.2d at 499.








When reviewing parental right termination
factual findings, we determine whether the evidence is such that a fact finder
could reasonably form a firm belief or conviction about the truth of the State=s allegations.  In re C.H., 89 S.W.3d at 25.  In reviewing the factual sufficiency, the
reviewing court considers all the evidence in the record, both that which
supports and that which contradicts the trial court=s findings.  Id. at 29.  When
presented with legal and factual sufficiency challenges, the reviewing court
first reviews the legal sufficiency of the evidence.  Glover v. Tex. Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981).

To
terminate Ms. Ason=s parental rights, the court was
required to find that she committed one of the acts or omissions prohibited by
section 161.001(1) of the Family Code and that termination was in M.T. and A.A.=s best interests.  Tex. Fam. Code. Ann.
'' 161.001(1)-(2). 

Act or
Omission Prohibited by Section 161.001(1)

The jury
found violations of three statutory conditions. 
Ms. Ason challenges only the finding under
161.001(1)(D), thus conceding the findings under
161.001(1)(E)B(F). 
Only one finding under the termination of parental rights statute is
necessary for a judgment of termination.  Robinson v. Tex. Dep=t of Protective & Regulatory Servs., 89 S.W.3d 679, 687 (Tex. App.CHouston [1st Dist.] 2002, no pet.).  Therefore, we need only determine if the
evidence was legally and factually sufficient to support the best interests
finding.

Best
Interests Under 161.001(2)

A strong
presumption exists that a child=s best interests are served by maintaining the parent‑child
relationship.  In re
B.M.R., 84 S.W.3d at 819.  An appellate court may consider the non‑exhaustive
list of factors set forth in Holley v. Adams, 544 S.W.2d 367, 371B72 (Tex. 1976) in ascertaining the
best interests of a child.[6]  These factors include: 








(1) Desires of the
children.  A.A. was two at the time of trial and too
young to express her desires.  However,
Elizabeth Daily, a caseworker with TDPRS, testified that there were foster
parents available to adopt M.T. and that they were very patient and loving and
that M.T. was happy and doing well with them.

(2) Current and future
emotional and physical needs of the children.  Dr. Lawrence Thompson, a clinical psychologist
at the Children=s Assessment Center, testified that the primary thing M.T.
needs, in terms of her long-term prognosis, is a safe, secure, and loving home
environment.  He believed that she needs
long-term individual psychotherapy and that she may need psychological
medications.  Ms. Ason
contends that, while in custody of the TDPRS, M.T. was placed in different
foster homes and at one point was admitted to a psychiatric hospital.  She believes M.T. was Aacting up@ partly because she was separated
from her parents.  Dr. Thompson, however,
opined that the kind of behaviors M.T. exhibited[7]
(anger, detachment disorder, aggression, and acting out sexually) were probably
the result of some long-standing problems in the home (with Ms. Ason) and not merely caused by being away from her
parents.  There is evidence that, unless
Ms. Ason improved her parenting skills and
participates in services recommended by the TDPRS, A.A. is at risk for having
the same thing happen to her as happened to M.T.  








(3) Current and future
physical danger to the children.  Dr. Thompson testified
that M.T had indications of physical abuse, with marks all over her body.  Ms. Ason told Dr.
Thompson that M.T. had not been physically abused but rather that she had a
skin condition called impetigo and that M.T. had scarred herself by
scratching.  Ms. Ason
testified that a particular scar M.T. had occurred when M.T. played with an
iron.

Dr.
Thompson diagnosed M.T. as having been sexually abused; he observed that she
acted out sexually in several ways and tried to touch other people
inappropriately.  In addition, Dr.
Thompson opined that the greatest risk, as it relates to Ms. Ason, was that of continuing sexual abuse because (1) Ms. Ason continued to be reluctant to believe that M.T. was
sexually abused or that Mr. Ason had committed such
abuse despite M.T.=s disclosure that he had, (2) Ms. Ason
indicated she missed Mr. Ason and that she still
wanted a relationship with him and had no plans to divorce him, and (3) Ms. Ason=s ability to extricate herself from a relationship with Mr. Ason (or another potentially abusive man she would possibly
date in the future) is questionable. 
These bear on Ms. Ason=s parental abilities.  Ms. Ason seemed not
to believe her husband had abused M.T. because, at least in part, he lived out
of state most of the time.  Ms. Ason believed it was unclear that, if M.T. were sexually
abused, that Mr. Ason was the perpetrator because
M.T. had said that Adaddy@ sexually abused her but that she often referred to several
different people as Adaddy.@

Dr.
Thompson also opined that the greatest risk factor Mr. Ason
poses to the children is A[m]ost definitely sexual abuse@ and the indications of neglect and
physical abuse.  Yet, there is evidence
that, even after disclosing the sexual abuse by Mr. Ason,
and after Ms. Ason agreed Mr. Ason
would have no contact with A.A., Mr. Ason was found
with A.A. in her grandmother=s home. 

Dr.
Thompson testified that many things relevant to M.T. were also relevant to A.A.
as part of the family unit, and there was evidence that A.A. would have become
like M.T. if she had stayed with her mother.








(4) Parental abilities
of the person seeking custody.  Ms. Ason stated that her primary concern was her children, that
she loved them and believed that she had been doing her best to provide the
best care for them.  There is evidence
that Ms. Ason had a close relationship with her children
before they were removed.  However, the
evidence of neglect and physical and sexual abuse M.T. suffered, as well as Ms.
Ason=s inability to consider that M.T. was sexually abused, bear
on her parental abilities insofar as her ability to keep her children
safe.  Further, Dr. Thompson testified
that he had concerns about Ms. Ason=s parenting skills.  There is evidence that one or more employees
of M.T.=s day care center told Ms. Ason she had a bad body odor and that she had a discharge
in her underwear and should go to the doctor and that, while Ms. Ason made an appointment, she failed to follow up on it.

(5) Whether programs are available to
assist the person seeking custody in promoting the best interests of the child.
 Ms. Ason testified
that she had been attending therapy, had completed parenting classes, and that
she had learned from going to discussions. 
Ms. Ason points out that she has completed
parts of her family service plan and, at trial, was still working on the
requirements of the plan by participating in counseling. 

It is certainly commendable that Ms. Ason is attempting to make such positive changes.  However attempting such changes does not
negate a finding that termination is in the children=s best interests.  See In re M.G.D., 108 S.W.3d 508, 513
(Tex. App.CHouston [14th Dist.] 2003, pet.
filed) (finding evidence factually sufficient to support conclusion that
termination of mother=s parental rights was in children=s best interest despite mother having
complied in all but minor respects with a family service plan,
completed substance abuse and parenting classes, and apparently remained
drug-free).  Often, the failure to comply
with a family service plan is cited as evidence favoring termination, but the
converse is not necessarily trueBthat
compliance with a plan means termination cannot be in a child=s best interests.  Id. at 514.  Certainly, then, something short of full compliance will not
dictate that termination cannot be in a child=s best interests.  








There was evidence at trial that Ms. Ason had not completed her individual therapy.  There was also evidence that, to the extent
Ms. Ason was not motivated to believe her husband
molested M.T., the therapy may not be helpful. And the jury heard evidence that
A.A. is at risk unless Ms. Ason improves her
parenting skills and participates in services recommended by the TDPRS. We
cannot predict whether, upon completing the programs, Ms. Ason
will immediately be able to care for her children in a way that would meet the
children=s best interests. What the jury heard
was evidence that M.T. needsCnow, not in the futureCa safe, secure, and loving home
environment.  To have the children remain
in foster care on the chance of her transformation delays their ability to
experience a stable and secure home environment.  Thus, although Ms. Ason
contends there was no evidence presented that M.T. and A.A. could not have
remained in their foster care placement while she continued to work on the
family service plan, the evidence clearly suggests
that doing so would not be in the children=s best interests.

(6) Plans for the child by the person
seeking custody.  Ms. Ason testified
that if she got her children back, they would live in an apartment she shared
with her friend and mother of two children. 
Ms. Ason testified that, at the time of trial,
A.A. seemed fine but that M.T. may need special attention but that she could
not say whether M.T. needed to continue in therapy but that she planned to
participate in therapy with her.

Elizabeth Daily, a caseworker with
TDPRS, testified that there were parents available to adopt M.T. and that they
were very patient and loving and that M.T. was happy and doing well with them.

(7) Stability of the home or proposed
placement.  Ms. Ason contends
that, as of the date of trial, she had a job, a stable place to live, and no
plans to live with her husband Israel Ason.  She also contends that the TDPRS called only
one mental health professional to testify about the children=s best interests and that the case
worker and foster mothers who testified were not experts qualified to give a
recommendation on termination.  








Nothing in this area of the law
limits jurors to the opinions of experts.  In re M.G.D., 108 S.W.3d 508 at 512. Surely, they may apply their own
experience and common sense to the facts to draw conclusions regarding a child=s best
interests.  Id.  Expert testimony may well be helpful in
termination cases, but there is no reason to think jurors are unqualified to
form their own opinions about whether someone is likely to provide a stable and
healthy home.  Id.  TDPRS caseworker Daily
testified that placing the children for adoption was in their best interests;
that it would provide A.A. a safe, stable, loving home without the stigma of a
foster home and that it would prevent further disruptive litigation.

(8) Acts or omissions of the parent
which may indicate that the parent‑child relationship is not proper. 
Ms. Ason=s inability to prevent the sexual and
physical abuse M.T. suffered indicate she may have
caused or failed to prevent such abuse.

(9) Any excuse for acts or omissions
of the parent.  Ms. Ason concedes
that she may lack some attributes of the ideal parent.

Conclusion

After weighing the evidence as it
relates to the nine Holley factors, we conclude there is legally and
factually sufficient clear and convincing evidence to support the trial court=s finding that termination of the
parent‑child relationship is in M.T. and A.A.=s best interests.  We therefore overrule Ms. Ason=s second and final point of error and
affirm the judgment of the trial court. 

 

 

 

/s/        Paul
C. Murphy

Senior Chief Justice

 

Judgment rendered and Memorandum
Opinion filed September 4, 2003.

Panel consists of Chief Justice Brister, and Justices Fowler and Murphy.[8]

 

 











[1]  Also known as Shumeki Nakii
Thomas.





[2]  M.T. was 6
years old and A.A. was 2 years old at the time of trial.





[3]  See Tex. Fam. Code Ann. ' 161.001(2) (Vernon 2002).





[4]  Although Ms. Ason claims that the sole finding adverse to her under ' 161.001 was a finding under section 161.001(1)(D)
(that she knowingly placed or knowingly allowed the children to remain in
conditions or surroundings that endangered the physical or emotion al
well-being of the children), the court signed a nunc
pro tunc degree specifically incorporating the jury=s verdict, in its entirety, where the jury found
violations of three conditions under section 161.001(1), specifically section
161.001(1)(D)B(F).





[5]  See
Tex. Fam. Code Ann., '
161.001(1)(D)B(F)
(Vernon 2002).





[6]  The State is
not required to prove all of the Holley factors, particularly if there
is undisputed evidence that the parent‑child relationship endangers the
child=s safety.  In re C.H., 89 S.W.3d at 27.  Absence of evidence about some of the best interests factors does not preclude a factfinder
from reasonably forming a strong conviction that termination is in the child=s best interests.  Robinson, 89 S.W.3d at
688.





[7]  Dr. Thompson
stated that M.T. was functioning at a very low level psychologicallyCso much so, that he was unable to do some of the
standard testing.  Particularly, he noted
that she had gross difficulty with her anger and diagnosed her with
intermittent explosive disorder, losing all control and acting out aggressively
with extreme temper tantrums.  He further
noted that she had reactive attachment disorder, often caused by neglect and/or
physical or sexual abuse.





[8] Senior Chief Justice Paul C. Murphy
sitting by assignment.