Opinion issued March 29, 2012.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-11-00565-CV

———————————

In re G.A., a minor



 



 

On Appeal from the 314th District Court

Harris County, Texas



Trial Court Case No. 2009-06989J

 



 

MEMORANDUM OPINION

          The
Texas Department of Family and Protective Services (the Department) took
conservatorship of G.A. (“G.”) and instituted a proceeding to terminate the parental
rights of her father.  A jury found that:
(1) the father knowingly placed or knowingly allowed G. to remain in conditions
or surroundings which endangered her physical or emotional well-being; (2) the
father engaged in conduct or knowingly placed G. with persons who engaged in
conduct which endangered G.’s physical or emotional well-being; (3) the father
failed to comply with a court order that prescribed the actions necessary for the
father to regain custody of G.; and (4) termination of the parent-child
relationship between the father and G. is in G.’s best interest.  See Tex. Fam. Code Ann. § 161.001(1)(D), (E), (O) (West 2008). 
The trial court entered judgment on the jury’s verdict.

The father
appeals, contending that the trial court erred in terminating his parental
rights because the evidence is factually insufficient to support the jury’s
findings.  He further
contends that the trial court’s extension of time to adjudicate the termination
suit beyond one year violates his due process rights.  Finding no error, we affirm.  

Background

Events leading to the Department’s
suit

          In
2007, the father, who admitted to recreational use of marijuana, entered his
second guilty plea to a marijuana possession charge after he was apprehended
with a small amount of marijuana and over $5,000 in cash.  As an immigrant with prior criminal
convictions, the father came under the scrutiny of federal immigration
officials.  The Immigration and Customs
Enforcement Agency (ICE) began proceedings to deport the father to his home
country of Lebanon.  

          In
late 2008, the father began dating S.L.  S.L.
became pregnant with G. in early 2009.  S.L.,
a drug abuser, admitted to using cocaine and marijuana, as well as prescription
pain medications, including alprazolam and hydrocodone.  By then, she already had an extensive history
with the Department, first as the child of a drug-addicted mother and later as
a drug-addicted mother herself, charged with neglect of the three children she had
given birth to before becoming pregnant with G.[1]  Early in the father’s relationship with S.L.,
the Department was providing family-based services to S.L. to monitor her and assist
in the care of her son, N. 

The father
provided S.L. with housing and cash during their relationship.  His income came from various sources,
including a number of rental properties, construction work, and Houston
Chronicle sales.  At trial, the father
valued his rental properties at $1.5 million, an amount significantly higher
than the approximately $30,000 appraised value of his properties recorded in
county tax records.  The father’s records
show that he has used more than one Social Security number, and the amount of
income reported on his federal income tax return was a fraction of the amount
of income he testified to at trial.

In March 2009, while pregnant with
G., S.L. tested positive for cocaine, alprazolam, and opiates.  She entered a drug abuse treatment program.  She left eight-year-old N. with G’s father.  One day, the father left N. “with neighbors,”
and N. disappeared.  S.L. reported N.’s disappearance
to the Department.  N. was later found
with his father, a drug addict who had recently been released from jail and was
not authorized to have access to N.  

          The
Department took custody of N. after this incident.  When the Department interviewed G.’s father
about the circumstances that led to N.’s disappearance and removal from the
home, the father denied his relationship with S.L.  He claimed that they were “just dating.”  When N. first came into the Department’s custody,
he had regular visits with his mother and G.’s father.  The worker observing the visits became
concerned by G.’s father’s
apparent inability or unwillingness to control his anger and N.’s strongly negative emotional reaction in
the aftermath of the visits.  N. disclosed
in counseling that he was afraid of G.’s father, and that the father had hit
him on two separate occasions.  In a
supervised visit following N.’s outcry, the father kept saying to him,
“Why you telling people I hit you? I didn’t hit you.  Why you keep saying—making
statements that I’m the one that attacked you?”, until the boy was reduced to
tears.   Shortly after this incident, the
Department ended the family visits.  Ultimately,
S.L.’s parental rights over N. were terminated.

          In
the meantime, S.L. had left the drug treatment program when N. disappeared in
March 2009.  She relapsed into drug
use.  She tested positive for
benzodiazepine and opiates with cocaine during prenatal visits.  In July, when S.L. was six-and-a-half months
pregnant with G., she arrived at the emergency room complaining of labor
pains.  She admitted to recent drug use,
and was evaluated for a possible overdose.  Doctors admitted her to the hospital and
advised her to remain for twenty-three hours for monitoring to ensure that her
unborn child, G., was out of danger.  Just five hours after she was admitted,
however, G.’s father arrived.  He helped S.L.
check out of the hospital, and signed a form acknowledging that her departure
was against medical advice.  

          In
late September 2009, G. was born with opiates and benzodiazapine
in her system.  The Department visited
the hospital shortly after G.’s birth, took G. into emergency custody, and
placed her in foster care when she was five days old.  The foster parents intervened in this suit as
interested parties.

Events after the termination suit

          The
Department began these proceedings against the father and S.L. in early October
2009.  The trial court signed an order
requiring that the father satisfy the Department’s family service plan, which,
among other things, required the father to (1) complete anger management
and parenting classes, (2) complete drug and alcohol assessment and follow
its recommendations; (3) maintain stable employment and provide weekly
proof of employment to the caseworker; (4) attend scheduled visits with
the child; and (5) maintain suitable housing.  The trial court also ordered the father to
remain drug-free, submit to random drug testing, refrain from criminal
activity, and complete substance abuse treatment.  

          At
trial, the father denied ever using cocaine and stated that he had last used
marijuana a year earlier.  Yet, hair
samples taken from him in October 2009, November 2009, and February 2011 all
yielded positive test results, the first for both cocaine and marijuana, the
second for cocaine, and the third for marijuana.  The drug levels were indicative of a
recreational user.  The father had no
explanation as to why the hair testing yielded positive results.  The February 2011 hair
sample tested positive only on the outer portion of the hair shaft, which, the
testing expert explained, could have resulted from mere exposure to marijuana
smoke.  The expert further opined,
however, that the amount of tetrahydrocannabinol in the hair indicated that it
was more likely to have resulted from ingestion of the drug rather than simply
exposure to secondhand smoke.  The father
categorically denied having used either drug.  With respect to his immigration status, the
father had exhausted his appeals and was subject to an outstanding order of deportation
at the time of trial.  With respect to
his relationship with S.L., the father admitted that they were still living
together as of February 2010.  He denied that
she still was using drugs, even though she tested positive for cocaine, alprazolam,
and opiates a month later.  The father claimed
he was no longer in a relationship with S.L. by April, but the court-appointed
Child Advocates worker suspected that the father was still living with her.  During a court hearing in May, the father had claimed
that he had kicked S.L. out of his home a few weeks before.  He previously had told a caseworker that S.L.
was absent at that time because she had gone to visit friends out of town.  Those irreconcilable statements indicated to the
worker that the father was minimizing the extent and degree of his relationship
with S.L. 

In July 2010, the father took S.L.
for emergency psychiatric services.  S.L.
stated that she lived in a common-law spousal relationship with the father and
that she had been ingesting heroin, cocaine, and alprazolam since the night
before and wanted to kill herself.  At
the end of July, S.L. relinquished her parental rights to N., and the court
signed a termination order.  

In August 2010, two Child Advocates
workers paid the father an unscheduled home visit.  The father denied that he was in a
relationship with S.L., but while the workers were in the house, they heard a suspicious
noise coming from the attic.  S.L. later
admitted to Child Advocates that she was hiding in the attic during the
interview.  At trial she recanted, saying
that “I told them that because I was mad. 
He put me in jail so I lied.”  As
with N., S.L. voluntarily relinquished her parental rights to G.




 

Discussion

I.        Evidentiary
Sufficiency

          A.       Standard of Review

The father challenges the factual sufficiency of the trial
court’s findings that he endangered his daughter and that termination was in her
best interest.  See Tex. Fam. Code Ann. § 161.001(1), (2) (West Supp. 2011).  In proceedings to terminate the parent-child
relationship brought under Texas Family Code section 161.001, the Department
must prove one or more of the acts or omissions enumerated under section
161.001(1) and prove that termination is in the best interest of the child.  Tex. Fam. Code Ann. § 161.001.
 Both elements must be established, and
termination may not be based solely on the best interest of the child as
determined by the trier of fact. Tex. Dep’t of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).
 A trial court’s decision to terminate
parental rights must be supported by clear and convincing evidence.  In re J.F.C., 96 S.W.3d 256, 263–64 (Tex. 2002).  “‘Clear and convincing evidence’ means the
measure or degree of proof that will produce in the mind of the trier of fact a
firm belief or conviction as to the truth of the allegations sought to be
established.”  Tex. Fam. Code Ann. § 101.007 (West 2008).  

“In reviewing termination findings for factual sufficiency, a
court of appeals must give due deference to a jury’s factfindings
and should not supplant the jury’s judgment with its own.”  In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006) (citations omitted).  We must determine whether the evidence would
allow a factfinder to have formed a firm conviction or belief about the truth
of the allegations.  Id.  “If, in light of the
entire record, the disputed evidence that a reasonable factfinder could not
have credited in favor of the finding is so significant that a factfinder could
not reasonably have formed a firm belief or conviction, then the evidence is
factually insufficient.”  J.F.C., 96 S.W.3d at 266–67, quoted in H.R.M., 209 S.W.3d at 108. 

B.       Analysis

          1.       Predicate grounds for termination

The Department sought termination of the father’s parental
rights under paragraphs D, E, and O of section 161.001(1) of the Family
Code.  Both D and E describe acts of
endangerment, and O concerns the parent’s failure to comply with the
court-ordered family service plan.  “Only
one predicate finding under section 161.001(1) is necessary to support a
judgment of termination when there is also a finding that termination is in the
child’s best interest.”  In re A.V., 113 S.W.3d
355, 362 (Tex. 2003).  

The jury found that the father knowingly placed or knowingly
allowed G. to remain in conditions or surroundings which endanger her physical
or emotional well-being.  The judgment
recites, consistent with the jury’s findings, that the
father engaged in conduct or knowingly placed G. with persons who engaged in
conduct which endangered G.’s physical or emotional well-being.  See Tex. Fam. Code Ann. § 161.001(1)(D), (E).  

To “endanger” means to expose a child to loss or injury or to
jeopardize a child’s emotional or physical health.  Walker
v. Tex. Dep’t of Family & Protective Servs.,
312 S.W.3d 608, 616 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); Robinson v. Tex. Dep’t of Protective &
Regulatory Servs., 89 S.W.3d 679, 686 (Tex. App.—Houston
[1st Dist.] 2002, no pet.) (citing Boyd, 727 S.W.2d at 533).  The term means “more than a threat of
metaphysical injury or the possible ill effects of a less-than-ideal family
environment.”  Boyd, 727 S.W.2d at 533. “Rather, ‘endanger’
means to expose to loss or injury; to jeopardize.”  Id.  Endangerment may be inferred from parental
misconduct.  Id.  The relevant inquiry is
whether evidence exists that a parental course of conduct endangered the child’s
physical or emotional well-being.  The
conduct does not have to occur in the presence of the child, be directed toward
the child, or cause the child injury. Walker,
312 S.W.3d at 616–17.  The conduct may occur before the child’s birth
and both before and after the child has been removed by the Department.  Id. at 617.

The evidence shows that while the mother was pregnant with G.
she abused drugs that posed a danger to her unborn daughter.  The father was aware that the mother was
using drugs while she was pregnant, yet he played a part in her departure from drug
treatment before she completed the program and he continued to supply her with money,
which she used to buy drugs.  Near the
beginning of the third trimester of her pregnancy, the mother overdosed on
drugs and was taken to the hospital for treatment.  Against medical advice, the father actively
assisted the mother in leaving the hospital only several hours after she was
admitted.  The father signed discharge
papers confirming that he was aware that he was acting against medical advice
in removing the mother from the hospital. 
The mother had no recollection of this incident; she testified that she
“probably” was “still high.”

The father asserts that this evidence relates to the mother’s
conduct, not his.  We disagree.  A rational factfinder could reasonably infer
that the father was instrumental in S.L.’s premature removal from drug
treatment and the hospital, affirmative conduct that endangered the unborn child.  The father also points to his testimony about
his efforts to help the mother stop using drugs, such as encouraging her to
attend drug treatment programs in the spring and summer of 2009.  At the same time, though, the father categorically
denied ever using cocaine and denied any recent use of marijuana, denials that
ran counter to the positive hair follicle test results for marijuana and
cocaine, as well as his aunt’s testimony that she was aware of his drug issues.
 The father also attempted to conceal
that through at least October 2010—nearly a year into the termination
proceeding—he remained in a relationship with S.L., who continued to abuse
drugs. 

These acts, as well as the father’s other inconsistent
statements, allowed the jury to reasonably infer that the father was not
credible.  He minimized or denied the
serious jeopardy that illicit drug use by either of her parents posed to G.’s
well-being.  We conclude that the jury
could reasonably have resolved the disputed evidence in favor of its finding
and formed a firm belief or conviction that the father either knowingly placed
or knowingly allowed G. to remain in conditions or surroundings which endangered
her physical or emotional well-being.  See J.F.C., 96 S.W.3d
at 266. 

2.       Best interests of the child

In Holley v. Adams, the Texas Supreme Court provided a nonexclusive list of
factors that the trier of fact in a termination case may use in determining the
best interest of the child.  544 S.W.2d 367, 371–72 (Tex. 1976).  These factors include: (1) the desires
of the child; (2) the emotional and physical needs of the child now and in
the future; (3) the emotional and physical danger to the child now and in
the future; (4) the parental abilities of the individuals seeking custody;
(5) the programs available to assist these individuals to promote the best
interest of the child; (6) the plans for the child by these individuals or
by the agency seeking custody; (7) the stability of the home or proposed
placement; (8) the acts or omissions of the parent that may indicate that
the existing parent-child relationship is not a proper one; and (9) any
excuse for the acts or omissions of the parent. 
Id.  These factors are not
exhaustive, and the Department need not prove all factors as a condition
precedent to parental termination.  In
re C.H., 89 S.W.3d at 27; Adams
v. Tex. Dep’t of Family & Protective Servs.,
236 S.W.3d 271, 280 (Tex. App.—Houston [1st Dist.] 2007, no pet.).  

          G. is too young to express her
preference, so the record has no evidence of her desires.  With respect to the second and seventh Holley factors, however, the record
shows that Department workers opined that the father had not developed any
emotional bond with G.  The father lacked
stable employment and housing, and he was subject to deportation.  Also undermining a finding in the father’s
favor on these factors are the father’s criminal history involving possession
of drugs and the unexplained discrepancies between the father’s reported income
on his tax filings and the amount he testified to, which, together with his use
of two Social Security numbers and his failure to submit weekly employment
data, suggest some improper conduct, either in the means of earning the income
or in the accuracy of reporting it.  Countering
this evidence is the father’s parenting plan, in which he explained that his
work was flexible enough to allow him to be G.’s primary caretaker.  He also planned to have his mother or
extended family care for G., or, if they were not available, to place her in a day-care facility near his home.  Testimony from the father’s family members,
however, indicated that the father was out of town for weeks at a time on
construction projects.  The child is
currently in foster care, and she is doing well.  The foster parents intervened to urge that
placement with the father is not in the child’s best interest.  A reasonable jury could conclude that the
father’s supporting testimony did not outweigh the evidence favoring a finding
that termination is in the child’s best interest.

          With respect to the factor concerning
the emotional and physical danger to the child, the findings under
section 161.001(1)(D) and (E) also weigh in favor
of termination.  A parent’s history of
drug use or criminal conduct can show a pattern of conduct that subjects a
child to an uncertain and unstable life, endangering the child’s physical and
emotional well-being.  Edwards v. Tex. Dep’t of Protective Servs., 946 S.W.2d 130, 138 (Tex. App.—El Paso 1997, no
writ).  The father’s concealment
of his drug use and his continued relationship with S.L. demonstrates an inability
to perceive the danger that parental drug use would pose to a child.  

The foster mother testified that she observed the father’s
behavior over time.  He exhibited a lack
of control over his anger and domineering treatment of his own mother, and she
believed that he would not treat a toddler appropriately.  Lisa McCartney, a program director for the
Department, likewise testified that the father consistently showed signs of
aggression, intimidation, and manipulation. 
The evidence also shows that the father mistreated and neglected the
mother’s eight-year-old son while the boy was in his care.  The jury was entitled to believe the outcry
testimony that the father hit the back of his head and called him “stupid” over
the father’s denial of the incident.  The
father also left the mother’s son with acquaintances without being vigilant in
protecting him from his drug-addicted father, and the boy’s father was able to
kidnap him as a result.   In contrast, the Child Advocates
representative testified that her visit at the foster placement led her to
conclude that the home was appropriate,
safe, and clean, and G. was happy.  The
evidence relevant to this factor also supports termination.

          While
the father articulated plans for the child, and completed parenting and anger
management classes, his failure to address or eliminate drug use in the home allowed the jury to
infer that he lacked satisfactory progress in drug treatment and prevention
issues.  We hold that factually
sufficient evidence supports the finding that termination is in G.’s best
interest.

II.      Validity of Extension Order 

          The father contends that he was
deprived of his due process rights when the trial court denied his motion to
dismiss the case based on Family Code section 263.401(b).  That provision imposes a one-year deadline on
termination suits, but a court may grant one 180-day extension of that period
if the “court finds that extraordinary circumstances necessitate the child’s
remaining in the temporary managing conservatorship of the department and that
continuing the appointment of the department as temporary managing conservator
is in the best interest of the child.”  Tex. Fam. Code Ann. § 263.401 (West 2008).  The father argues that the extension order
was void because the trial court judge signed the order to retain the case on
the docket after the father had filed a motion to recuse the judge, in
violation of Texas Rule of Civil Procedure 18a. 

Rule 18a, which prescribes the procedure for seeking recusal
of judges, limits the actions a judge may take in a case after a party has
filed a motion to recuse:

Prior to any further proceedings in the case, the judge shall either
recuse himself or request the presiding judge of the administrative judicial
district to assign a judge to hear such motion. If the judge recuses himself,
he shall enter an order of recusal and request the presiding judge of the
administrative judicial district to assign another judge to sit, and shall make
no further orders and shall take no further action in the case except for good
cause stated in the order in which such action is taken.

Tex. R. Civ. P. 18a.    The
order retaining the suit declares that, 

Pursuant to § 263.401(b), Texas Family Code, the Court finds that it
has continuing jurisdiction of this suit, and that extraordinary circumstances
necessitate the subject child(ren) remaining in the
temporary managing conservatorship of the Department.  It further finds that the appointment of the
Department as temporary managing conservator continues to be in the best
interest of the child, and an order to retain the case on the Court’s docket
should be granted.  The Court also finds
that the following temporary orders for the safety and welfare of the child are
necessary to avoid further delay in resolving the suit.

The
father does not challenge the adequacy of the findings supporting for the
180-day extension.  We hold that a
finding of extraordinary circumstances under section 263.401(b) satisfies the “good
cause” requirement of Rule 18a.  See Tex.
R. Civ. P. 18a; see also In re
McKee, 248 S.W.3d 164, 165 & n.1 (Tex. 2007) (holding that judge had
authority to sign transfer order after granting motion to recuse and observing
that good cause is ordinarily inherent in order performing administrative
function).  We further note that the
trial judge to whom the case was transferred ratified the order by signing its
own 180-day extension order.

Conclusion

We hold that factually sufficient
evidence supports the predicate findings for termination of the parent-child
relationship as well as the finding that termination is in the best interest of
the child.  We further hold that the trial
court’s denial of the father’s motion to dismiss did not violate his due
process rights.  We therefore affirm.

 

                                                                      Jane
Bland

                                                                      Justice


 

Panel
consists of Justices Keyes, Bland, and Sharp. 


Sharp,
J., concurs without opinion.











[1]
        One of those children was living
with his father, and S.L. had already lost her parental rights to another
child.