COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| K.M., | § | |
|---|---|---|
| | | No. 08-12-00018-CV |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 65th Judicial District Court |
| TEXAS DEPARTMENT OF FAMILY | § | |
| AND PROTECTIVE SERVICES, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC# 2010CM8329) |
| | § | |

## O P I N I O N

In this accelerated appeal, Appellant K.M. (Kari) appeals from the trial court's order terminating her parental rights to her child, S.M., and appointing the Texas Department of Family and Protective Services as S.M.'s sole managing conservator.[1]  We affirm.

## BACKGROUND

After S.M. reported that she had been sexually abused by her stepfather, Brandon, Department Investigator Kristen Johnson was assigned in May 2010 to investigate the allegations.[2] Johnson interviewed S.M., Brandon, and S.M.'s mother, Kari.  S.M. informed Johnson that she did not believe Kari was aware of Brandon's abuse, which consisted of touching S.M. "over and under her clothing, on her breast and on her butt."  According to Johnson, Kari was hostile during the investigation and expressed a disbelief that the sexual abuse had occurred.  Brandon, however, admitted touching S.M. a dozen times, over and underneath S.M.'s clothing in September 2009. Although Brandon had begun attending Sex Addicts Anonymous in January 2010, S.M. informed

---

[1]  Appellant's brief refers to Kari, mother of S.M. as "K.M.," and Appellee's brief refers to the child, S.M., as "K.M." For clarity, we do not refer to either the parent or the child as "K.M."

[2]  Caseworker Tanya Berry's Family Service Plan for Substitute Care notes that an uncle sexually assaulted S.M. when she was approximately nine years old.

Johnson that Brandon continued to abuse her thereafter. Finding reason to believe that Brandon had sexually abused S.M., Johnson referred the case to Family-Based Safety Services (FBSS).

In July 2011, Johnson attended the sentencing phase of a military court-martial proceeding after Brandon had been tried and found guilty of an offense arising from his sexual misconduct with S.M.[3] At the sentencing hearing, Kari testified that she did not believe the sexual-abuse allegations against Brandon and requested that the court show leniency in sentencing Brandon so that he could support her and her other children.

Johnson believed Kari's treatment of S.M. had endangered S.M.'s emotional and physical well-being. Johnson stated that over the course of several interviews with S.M., "[Kari] was telling [S.M.] that it was not a big deal . . . [and she] was a big girl and she just needed to basically suck it up." She further opined that S.M. had been both emotionally and physically affected by what had occurred and observed that Kari "was more upset that she was going to lose her benefits" than she was concerned for S.M.'s welfare. Johnson never observed Kari express compassion or understanding toward S.M. Rather, Johnson believed that Kari's testimony at Brandon's sentencing hearing indicated that Kari intended to stay married to Brandon.

Lauren Williams, a supervisor for an investigative unit at Child Protective Services, participated in an investigation regarding S.M.'s October 2010, allegation that Kari had physically abused S.M. S.M. had "received" a black eye and reported that her mother had hit her in the face. Williams assigned investigator Alexandra Acuna to the physical-abuse case. S.M. informed Acuna that she and Kari argued because Kari was angry that Brandon was being criminally prosecuted, blamed S.M. for "what had gone on," told S.M. that it was her fault that the family was having difficulties, and then hit S.M. in the face. According to Williams, Acuna had observed

---

[3] Johnson also testified during the guilt-innocence phase of that proceeding.

bruising and swelling around S.M.'s eye area consistent with S.M.'s description of the assault. Acuna's affidavit specified that Kari had been waving her fists in S.M.'s face, that S.M. had passed out, and had awakened the next morning with a black eye. Williams concluded that Kari had struck S.M. and that there was reason to believe that Kari had physically abused S.M. According to Williams, the incident not only caused physical endangerment to S.M. but also caused emotional endangerment because Kari was not supportive of S.M. as a sexual-abuse victim, did not believe the sexual abuse had occurred, and blamed S.M. for Brandon's actions. According to Williams, Kari thereafter placed S.M. at a runaway shelter from which S.M. ran away a few weeks later. After she ran away, S.M. informed Acuna that she was "terrified to go home" and was "scared for her life" because of Kari. The Department then "removed" S.M. Williams testified that she believed S.M.'s fear of her mother was valid and S.M. was thereafter "removed."

The Department's caseworker assigned to S.M. since December 2010, Tanya Berry, provided Kari with a court-ordered service plan which Kari signed and they reviewed together.[4] Berry testified that Kari had failed to complete a drug and alcohol assessment and did not attend family therapy with S.M. as required by the terms of the court-ordered service plan. Kari moved to Utah in January 2011, but failed to comply with Berry's request to provide the Department with documentation of services that Kari may have obtained in Utah in compliance with the service plan. As a consequence, Berry was unable to ascertain whether Kari had completed her therapy, had refrained from drug or alcohol use, or had obtained employment or suitable housing as mandated by the service plan. Kari failed to pay court-ordered child support.

According to Berry, Kari failed to comply with the requirement that she visit with S.M. on

---

[4] Berry related that when S.M. was three years old, she and her brother were placed in foster care as a result of her parents' substance abuse. S.M.'s father, Ryan, then left the family and had no further contact with S.M.

a regular basis and stated that S.M. last saw Kari face-to-face on January 25, 2011, when Berry and S.M. retrieved some of S.M.'s belongings from Kari's home. Although Kari traveled back to attend Brandon's court-martial hearing for a three or four-day period in July 2011, Kari made no effort to see S.M., despite the fact that Berry and S.M. were present at the hearing. Berry related that Kari testified in S.M.'s presence that she did not believe S.M's allegations and was concerned about the welfare of herself and her other children. S.M. informed Berry that since Kari moved in January 2011, Kari had sent messages through Facebook to S.M. which were "never positive" and blamed S.M. for breaking up the family. Kari's messages did not indicate a desire to see S.M. and Berry related that Kari failed to maintain contact with S.M. without providing any excuse for such failure. With the exception of a single email in September 2011, in which she expressed dissatisfaction because the Department had not encouraged S.M. to move to Utah and general dissatisfaction with Berry's performance, Kari stopped communicating with Berry after March 2011, and failed to provide Berry with any information about where she was living. In the September 2011 email to Berry, Kari did not inquire about S.M.'s well-being. Thereafter, Kari did not return any of Berry's email or telephone messages. Despite Berry's weekly emails to Kari, which included another copy of the service plan, S.M.'s psychological evaluation, temporary orders, status-hearing orders, and a request for updates on any services Kari may have obtained in Utah, Kari provided "no response at all."

S.M. expressed a desire to continue living with her foster family, and Berry testified that she is extremely supportive of S.M.'s placement with the foster family and that S.M.'s adoption by the foster family is part of the Department's permanency plan for S.M. According to Berry, Kari has shown no remorse for her treatment of S.M., has not expressed any future plans in relation to

4

S.M., has not demonstrated any parenting ability that shows an appropriate relationship with S.M., has not been a positive role model for S.M. since the sexual-abuse allegations, has made S.M. feel at fault for telling the truth and guilty for the family's lack of financial support after Brandon was found guilty at his court-martial proceedings, has been negative, has not shown any sort of a positive relationship with S.M., and has not made any effort to establish a positive relationship with S.M. Berry described Kari's behavior as antagonizing and noted that S.M. has been diagnosed with post-traumatic stress disorder resulting from the sexual abuse and the relationship with Kari. S.M. has required and has been attending therapy on a weekly basis since her removal. Berry recommended that Kari's parental rights to S.M. be terminated.

The Department filed a petition for protection of a child, seeking conservatorship of S.M. and termination of the parental rights of Kari and S.M.'s biological father, Ryan. That same day, the trial court entered an order of protection of a child in an emergency and notice of hearing by which it removed S.M. from Kari's care and appointed the Department as temporary sole managing conservator. The trial court found clear and convincing evidence to support termination of Kari's parental rights under Sections 161.001(1)(D), (E), (N), and (O) of the Texas Family Code. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(D), (E), (N), and (O) (West 2008).

## DISCUSSION

In a proceeding to terminate parental rights, the petitioner must demonstrate by clear and convincing evidence that: (1) the parent committed one or more of the acts specifically set forth in Texas Family Code section 161.001(1) as grounds for termination; and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001 (West 2008). "Clear and convincing evidence" means the measure or degree of proof that "will produce in the mind of the

5

trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008); *see In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002); *see also In re J.A.J.,* 243 S.W.3d 611, 616 (Tex. 2007) (contrasting the standards applied in termination proceedings and the standards applied in modification proceedings). We strictly scrutinize termination proceedings and construe any statutes authorizing involuntary termination in favor of the parent. *Holick v. Smith*, 685 S.W.2d 18, 20-21 (Tex. 1985).

Kari presents five issues for our determination, which we address in the following order. In Issues Two, Three, and Four, Kari challenges the sufficiency of the evidence to terminate her parental rights. In Issue Five, Kari complains that the trial court erred in finding factually-sufficient evidence that termination was in the best interest of S.M. In her first issue, Kari complains that the trial court plainly erred when it considered caseworker testimony that the child had been diagnosed with post-traumatic stress disorder, and that the error in reasonable probability prejudiced Kari as the evidence was insufficient to support the termination of her parental rights.

*Sufficiency Standards of Review*

When reviewing legal sufficiency challenges to termination findings, we consider all of the evidence in the light most favorable to the finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d at 266. We give deference to the fact finder's conclusions and presume the fact finder resolved any disputed facts in favor of its findings, so long as a reasonable fact finder could do so. *Id.; In re J.F.C.,* 96 S.W.3d at 266. We disregard any evidence that a reasonable fact finder could have disbelieved, or found to have been

6

incredible, but we do not disregard undisputed facts. *In re J.P.B.,* 180 S.W.3d at 573; *In re J.F.C.,* 96 S.W.3d at 266.

In reviewing the evidence for factual sufficiency, we must give due deference to the fact finder's findings, and we cannot supplement such judgment with our own. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *In re H.R.M.,* 209 S.W.3d at 108; *In re J.F.C.,* 96 S.W.3d at 266.

*Statutory Ground for Termination*

In Issue Two, Kari challenges the factual sufficiency of the evidence to support the termination of her parental rights under Section 161.001(1)(D) and (E) of the Texas Family Code and contends the evidence was legally insufficient to support the trial court's finding because there was no direct evidence of Kari's specific conduct by which she endangered or abused S.M. TEX. FAM. CODE ANN. § 161.001(1)(D), (E) (West 2008). In Issue Three, Kari similarly contends that the evidence was factually insufficient to support the trial court's termination of her parental rights under Section 161.001(1)(O) and also challenges the legal sufficiency of the evidence due to lack of direct evidence of Kari's conduct resulting in endangerment or abuse of S.M. In Issue Four, Kari challenges the sufficiency of the evidence to support the trial court's termination order upon a finding that Kari constructively abandoned S.M. However, only one predicate violation under Section 161.001(1) is necessary to support a termination decree. TEX. FAM. CODE ANN. § 161.001(1) (West 2008); *In re D.M.*, 58 S.W.3d 801, 813 (Tex.App.–Fort Worth 2001, no pet.);

7

*In re S.F.*, 32 S.W.3d 318, 320 (Tex.App.–San Antonio 2000, no pet.); *see also Texas Dep't. Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990) (op. on reh'g). Because we conclude the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(E) as challenged in Issue Two, we need not address Kari's remaining sufficiency challenges relating to Section 161.001(1) as raised in Issues Two, Three, and Four. *Id.*

Under Section 161.001(1)(E) of the Texas Family Code, the judge was required to find by clear and convincing evidence that Kari "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. §§ 161.001(1)(E) (West 2008). "To endanger" means to expose a child to loss or injury or to jeopardize a child's emotional or physical health. *See In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996); *Walker v. Tex. Dep't of Family and Protective Services*, 312 S.W.3d 608, 616-17 (Tex.App.–Houston [1st Dist.] 2009, pet. denied); *Robinson v. Tex. Dep't of Protective & Regulatory Servs.,* 89 S.W.3d 679, 686 (Tex.App.–Houston [1st Dist.] 2002, no pet.), *citing Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987). The term means "more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment . . . ." *Boyd,* 727 S.W.2d at 533. While endangerment often involves physical endangerment, the statute does not require that conduct be directed at a child or cause actual harm; rather, it is sufficient if the conduct endangers the child's emotional well-being. *Id.*; *In re U.P.*, 105 S.W.3d 222, 233 (Tex.App.–Houston [14th Dist.] 2003, pet. denied); *Robinson*, 89 S.W.3d at 686. Thus, the court's inquiry encompasses acts that endanger a child's physical or emotional well-being, or both. *See Boyd*, 727 S.W.2d at 534; *Smith v. Sims*, 801 S.W.2d 247, 250 (Tex.App.–Houston [14th Dist.] 1990, no pet.).

8

The relevant inquiry for a subsection (E) termination is whether evidence exists that the endangerment was the direct result of the parent's conduct, including acts, omissions, and failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex.App.–Fort Worth 2003, no pet.). Termination requires a voluntary, deliberate, and conscious course of conduct; it must be based on more than a single act or omission. *Id.*; *In re J.W.*, 152 S.W.3d 200, 205 (Tex.App.–Dallas 2004, pet. denied). It is not necessary that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533; *In re J.T.G.,* 121 S.W.3d at 125.

Endangerment of a child's well-being may be inferred from parental misconduct, including conduct that subjects the child to a life of uncertainty and instability. *Boyd*, 727 S.W.2d at 533; *In re R.W.*, 129 S.W.3d 732, 738-39 (Tex.App.–Fort Worth 2004, pet. denied). The parent-child relationship, and efforts to improve or enhance parenting skills, are relevant in determining whether a parent's conduct results in endangerment under subsection (E). *See In re D.T.*, 34 S.W.3d 625, 640 (Tex.App.–Fort Worth 2000, pet. denied).

In this case, there is evidence of a physical assault by Kari with her fists upon S.M. as well as evidence that S.M. awoke the following morning with a "black" eye. Included in the evidence before the trial court was testimony that Kari disbelieved S.M.'s allegations of sexual assault, even after Brandon admitted to and a jury found him guilty of committing the acts, had blamed S.M. for Brandon's action, had informed S.M. that the sexual assaults were "not a big deal," and had left S.M. at a runaway shelter. Evidence that Kari testified that she did not believe S.M.'s allegations and sought leniency on his behalf in S.M.'s presence at Brandon's trial permits an inference that Kari intended to stay with Brandon, despite his victimization of S.M. *Compare Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 824 (Tex.App.–Fort Worth 2007, no pet.) (evidence that a

9

person has engaged in abusive conduct in the past permits an inference that the person will continue violent behavior in the future). Abusive and violent criminal conduct by a parent can produce an environment that endangers the well-being of a child. *In the matter of B.R.*, 822 S.W.2d 103, 106 (Tex.App.–Tyler 1991, writ denied).

Considering all of the evidence in the light most favorable to the finding, we conclude that the trial court, as a reasonable trier of fact, could have formed a firm belief or conviction that its finding that Kari engaged in conduct which endangers S.M.'s physical and emotional well-being was true. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005), *quoting In re J.F.C.,* 96 S.W.3d at 266. This ground of the trial court's termination order is supported by legally-sufficient evidence. TEX. FAM. CODE ANN. § 161.001(1)(E) (West 2008).

We also conclude that there is sufficient evidence from which a rational trier of fact could have formed a firm belief or conviction that Kari engaged in a course of conduct endangering S.M.'s physical and emotional well-being. *In re H.R.M.,* 209 S.W.3d at 108; *In re J.F.C.,* 96 S.W.3d at 266. This ground of the termination order is therefore supported by factually-sufficient evidence as well. TEX. FAM. CODE ANN. § 161.001(1)(E) (West 2008). We overrule Issue Two.

### *Best Interest of Child*

In Issue Five, Kari contends that the trial court erred in finding that the evidence was factually sufficient to support a finding that termination of Kari's parental rights was in the best interest of S.M. We disagree.

There is a strong presumption that a child's best interests are served by maintaining the parent-child relationship. *In re L.M.,* 104 S.W.3d 642, 647 (Tex.App.--Houston [1st Dist.] 2003,

no pet.). The Texas Supreme Court has identified nine non-exhaustive factors that are relevant in determining whether termination of parental rights is in the best interest of the child. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).[5] The determination of a child's best interest does not require proof of any unique set of factors, and it does not limit proof to any specific factors. *Id.*

The same evidence of acts or omissions used to establish grounds for termination under Section 161.001(1) may be probative in determining whether termination of parental rights is in the best interest of the child. *In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002); *In re L.M.,* 104 S.W.3d at 647. Termination of the parent-child relationship is not justified when the evidence shows merely that a parent's failure to provide a more desirable degree of care and support of the child is due solely to misfortune or the lack of intelligence or training, and not to indifference or malice. *Clark v. Dearen,* 715 S.W.2d 364, 367 (Tex.App.–Houston [1st Dist.] 1986, no writ).

Neither Kari nor S.M. presented testimony at the termination hearing. Caseworker Berry testified that it was S.M.'s desire to continue living with her foster family. Berry stated that she was extremely supportive of S.M.'s placement within the foster family's home and noted that the foster family wishes to adopt S.M. Kari presented no evidence of her plans for S.M. if S.M. was returned to her custody.

The evidence demonstrates that Kari physically abused S.M. on one occasion resulting in unconsciousness and a blackened eye, left S.M. at a runaway shelter on another occasion, and

---

[5] The nine, non-exhaustive *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) the programs available to assist the parties seeking custody; (6) the plans for the child by the parties seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omission committed by the parent which may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions committed by the parent. *Holley*, 544 S.W.2d at 371-72.

demonstrated a pattern of endangerment to the emotional well-being of S.M. in part by refusing to believe that the sexual assaults upon S.M. occurred despite Brandon's confession that he committed the criminal acts upon S.M. and blaming S.M. for Brandon's commission of the sexual assaults upon S.M. Berry, Johnson, and Williams each testified that Kari's conduct had emotionally endangered S.M.'s well-being. Berry also testified that S.M. had been diagnosed with post-traumatic stress disorder in relation to the events with Brandon and Kari, that S.M. is in therapy sessions on an almost-weekly basis, and that such therapy is necessary in the future.

Despite opportunities to visit with S.M. during Brandon's trial, Kari made no effort to speak with S.M. who was also present at the trial in July 2011. Prior to that opportunity, Kari and S.M. had not visited with each other since January 2011, and, as of the termination proceedings in December 2011, Kari had not visited S.M. again. Kari did not comply with the Department's service plan which she had reviewed and signed, did not maintain contact with the Department as required, and failed to respond to the Department's repeated requests for documentation of services she may have completed in Utah after moving there. Kari presented no evidence that she had requested that S.M. be removed from the foster family after March 2011, and Berry testified that Kari never proposed a permanency plan for S.M.'s future living arrangements.

In light of all of the evidence, the trial court could have reasonably formed a firm belief or conviction that termination of Kari's parental rights was in the best interest of S.M. *In re H.R.M.,* 209 S.W.3d at 108; *In re J.F.C.,* 96 S.W.3d at 266. Issue Five is overruled.

*Erroneous Admission of Evidence*

We last address Issue One, in which Kari complains that the trial court erred in receiving testimony regarding S.M.'s diagnosis of post-traumatic stress disorder. To preserve a complaint

12

for our review, the record must show that the complaint was presented to the trial court by a timely motion, request, or objection in compliance with Rule 33.1(a). TEX. R. APP. P. 33.1(a); *Holcombe v. Reeves County Appraisal District*, 310 S.W.3d 86, 90 (Tex.App.–El Paso 2010, no pet.). Because Kari failed to object to this evidence, she has failed to preserve her complaint for our review. Issue One is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

GUADALUPE RIVERA, Justice

November 19, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.

13