

# IN THE
# TENTH COURT OF APPEALS

## No. 10-13-00080-CV

# IN THE INTEREST OF
# C.M., J.G., AND A.G., CHILDREN

**From the 74th District Court
McLennan County, Texas
Trial Court No. 2011-1457-3**

## MEMORANDUM OPINION

Theresa G. appeals from the trial court's judgment terminating her parental rights to her three children, C.M., J.G., and A.G. The trial court entered a judgment of termination based upon a jury verdict. The jury charge set out three grounds for terminating Theresa's parental rights (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endanger the children (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangers the children, and (3) failure to comply with a court order. TEX. FAM. CODE ANN. § 161.001 (1) (D) (E) (O) (West Supp. 2012). The jury found by clear and convincing evidence that one or more of the alleged grounds for termination was

established and that termination was in the best interest of the children. We affirm the trial court's judgment terminating Theresa's parental rights to C.M., J.G., and A.G.

**Standard of Review**

In three issues Theresa argues that the evidence is legally and factually insufficient to support the jury's findings on each of the three grounds for termination. Only one predicate act under section 161.001(1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex.2003). In conducting a legal sufficiency review in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusion and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex.2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002)) (emphasis in *J.P.B.*).

> In a factual sufficiency review,

> [A] court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.... [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record,

the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex.2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002)) (internal footnotes omitted) (alterations added).

### Facts

Theresa lived with her husband, Tony,[1] and their children J.G. and A.G. Theresa's daughter, C.M.[2] also lived in the home. The Texas Department of Family and Protective Services received a referral alleging sexual abuse of C.M., who was five years-old at the time, by her step-father, Tony. C.M. was staying with Richard, her biological father, and she told another relative that it "burned when she went to go pee pee" and that Tony "touched her between her legs and used his two fingers." Richard reported the incident to the police, and the police made the referral to the Department.

Rachel Richardson, with the Department, testified at trial that after receiving the referral, she met with C.M. and that C.M. stated that Tony touched her private area with "two hands." Richardson then arranged a forensic interview of C.M. Richardson further testified that she met with Theresa concerning the allegations. Theresa stated that she did not believe C.M. was telling the truth. Theresa also said that C.M. had previously told her she had pain in her private area. Theresa put "rash cream" on C.M.'s private area, but did not take her to the doctor. Richardson also spoke with the

---

[1] Tony is also referred to as Jose in the record.

[2] C.M.'s father, Richard is not a party to this appeal. Tony, the father of J.G. and A.G. is also not a party to this appeal.

principal at C.M.'s school. Theresa had told the principal that she believed Tony over her daughter.

Richardson testified that the three children were initially placed with a family friend, Eliza Chaves. Theresa was allowed to visit the children with supervision by Chaves. During one of the visits, Theresa and her grandmother tried to get C.M. to recant the allegation by telling C.M. that Tony and Theresa would both go to jail. C.M. became upset and started crying. After that visit, Chaves stated that she could no longer care for the children. Richardson testified that after that visit, she believed the children were in immediate danger. The children were then removed and placed in foster care.

Dr. Ann Sims testified that she examined C.M. and that C.M. said that Tony hit her and Theresa. C.M. also told Dr. Sims that Tony put his hand inside of her "coniche" which was the word C.M. used to refer to her front private area. C.M. held up her finger to demonstrate to Dr. Sims how Tony touched her "coniche," and C.M. told Dr. Sims it hurt when he touched her. Dr. Sims further testified that C.M. said Tony took all of her clothes off and then took pictures of her. Dr. Sims stated that the physical exam of C.M. was consistent with the outcry.

Dr. Sims also testified that she examined J.G., who was two years-old at the time. J.G. was not able to talk to Dr. Sims, but she did interact and engage with the doctor. Dr. Sims would call out a body part, and J.G. would point to that body part. When Dr. Sims said "coniche," J.G. pointed to her front private area. Dr. Sims stated that J.G. was a happy and smiling child. However, when Dr. Sims removed J.G.'s diaper for the

genital exam, she was "a totally different child." Dr. Sims testified that the smile disappeared and J.G. never squirmed or moved. J.G.'s legs became "flaccid" and she spread her legs apart after Dr. Sims removed the diaper. J.G.'s behavior caused Dr. Sims to be concerned that J.G. had suffered abuse.

Detective Ann Cyr, with the Waco Police Department, testified that she investigated the criminal proceeding involving C.M. and J.G. Tony was convicted of aggravated sexual assault and two counts of indecency with a child as a result of that criminal proceeding. Detective Cyr testified that Theresa told her "she refuses to believe that it [abuse] happened."

Theresa testified at trial that she was a victim of sexual abuse as a child. Theresa was molested at the age of six, and the abuse continued until she was eighteen. Theresa admitted that she told Richardson she did not believe C.M. and that she told the principal she did not believe C.M. The service plan for Theresa provided that she was to sever ties with Tony. Theresa testified at trial that she continued to write letters to Tony and that she went to the jail where Tony was being held, but she waited in the parking lot while her cousin went in to see Tony. Theresa admitted that she sent messages to Tony through her cousin that she loved Tony, but she could not come in because of the Department. She also sent a message that the Department could not keep her from Tony.

Section 161.001 (E) of the Texas Family Code allows termination of the parent-child relationship if the parent, "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being

of the child." TEX. FAM. CODE ANN. 161.001 (E) (West Supp. 2012). "Endanger" means "to expose to loss or injury; to jeopardize." *Texas Department of Human Services . v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). It is beyond question that sexual abuse is conduct that endangers a child's physical or emotional well-being. *See In re King*, 15 S.W.3d 272, 276 (Tex.App.—Texarkana 2000, pet. denied). Parental knowledge that an actual offense has occurred is not necessary; it is sufficient that the parent was aware of the potential for danger and disregarded that risk. *See In re Tidwell*, 35 S.W.3d 115, 118 (Tex. App.—Texarkana 2000, no pet.).

Theresa refused to believe the allegations of sexual abuse against Tony. She called C.M. a liar and made C.M. cry while trying to get her to recant the allegation of abuse. Richardson testified that Theresa's behavior was emotionally abusive. There was evidence presented at trial that Theresa was aware Tony took inappropriate pictures of C.M.

Theresa continued to have contact with Tony, and she showed no ability to be able to protect the children from abuse. Detective Cyr testified that Theresa told inconsistent stories during the criminal investigation. Detective Cyr believed that Theresa was not protective of her kids, but was protecting Tony.

Dr. James Shinder, a psychologist, testified that Theresa "has dealt with more tragedy, trauma and disaster than any person should ever have to deal with in three lifetimes." Dr. Shinder explained in detail Theresa's past sexual abuse and how she continues to get involved with persons who engage in sexual abuse. Dr. Shinder

testified that "She has so many problems that I had – I ultimately had to conclude that it is not possible for her to be viewed as an independent parental resource."

Dr. William Lee Carter, a psychologist, reviewed the psychological evaluation of Theresa. Dr. Carter testified that Theresa's testing showed "considerable disturbance and disruption in her emotional functioning." Dr. Carter testified that it appeared that Theresa was aware that Tony sexually abused the children because C.M. reported that her mom saw Tony touching J.G. and said "get out of my baby."

After reviewing all of the evidence, we find that a reasonable finder of fact could have formed a firm belief or conviction that Theresa endangered the physical or emotional well-being of the children TEX. FAM. CODE ANN. § 161.001(1)(E) (West Supp. 2012). Theresa was not supportive of C.M. as a sexual abuse victim and did not believe that sexual abuse of C.M. or J.G. occurred. *See K.M. v. Texas Dept. of Family and Protective Services*, 388 S.W.3d 396, 399 (Tex.App.-El Paso 2012, no pet.). Theresa was emotionally abusive in trying to get C.M. to recant the allegation of abuse. Theresa was also unable to adequately protect the children from abuse. The evidence is legally and factually sufficient to support the finding that Theresa endangered the physical or emotional well-being of the children. We overrule the second issue. There is no challenge to the sufficiency of the evidence to support the finding that termination was in the best interest of the children. Because the evidence is sufficient to support one ground of termination under TEX. FAM. CODE ANN. § 161.001 (1), we need not address the first and third issues.

**Conclusion**

We affirm the trial court's judgment.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed August 29, 2013
[CV06]