

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00600-CV

**IN THE INTEREST OF R.G.** Jr., A.A.V., A.A.V., A.G.V., and L.G., Children

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-PA-02312
Honorable Martha B. Tanner, Judge Presiding[1]

Opinion by:     Marialyn Barnard, Justice

Sitting:        Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  March 14, 2018

AFFIRMED

Appellant mother ("Mother") appeals the trial court's order terminating her parental rights

to her five children.  In a single issue on appeal, Mother asserts the evidence is legally and factually

insufficient to support the trial court's finding that termination of her parental rights was in her

children's best interests.  We affirm the trial court's order of termination.

### BACKGROUND

The Texas Department of Family and Protective Services ("the Department") filed a

petition to terminate Mother's parental rights to her five children,[2] Robby, Annie, Abby, Anthony,

---

[1] The Honorable Karen H. Pozza is the presiding judge of the 407th Judicial District Court, Bexar County, Texas.  The Honorable Martha B. Tanner, retired, was sitting by assignment.

[2] The record reflects Mother also had a sixth child, C.M.M.; however, the Department did not seek termination of Mother's parental rights to C.M.M.  Thus, Mother's parental rights to C.M.M. are not the subject of this appeal.

and Lacey,[3] after Mother continued to engage in domestic violence and failed to comply with the Department's service plan. The Department had become involved in the case in May of 2016 after receiving reports that Mother was exhibiting violent behavior toward a father of one of the children. At that time, all five children lived with Mother. After investigating the allegations, the Department removed the children from Mother's care and placed them with the following caregivers: Robby was placed with his paternal grandmother; Annie, Abby, and Anthony were placed with their paternal aunt; and Lacey was placed with her biological father. Thereafter, the Department filed its petition to terminate Mother's parental rights to all five children, and it was subsequently appointed temporary managing conservator of the children. The Department created a service plan for Mother, requiring Mother: (1) to attend and complete domestic violence and parenting classes; (2) to engage in individual counseling; (3) to obtain a psycho-social assessment and abide by recommendations made as a result of the assessment; and (4) to attend doctor's appointments for Annie, who has juvenile arthritis. The trial court ordered Mother to comply with each requirement set out in the plan. In addition to the service plan, the Department set up bi-weekly visitations for Mother to see her children.

Virginia Pavon was the Department caseworker who worked with Mother throughout the course of the case. According to Ms. Pavon, the most important item on Mother's service plan was her attendance and completion of domestic violence classes. However, Mother failed to complete those classes, continued to engage in domestic violence, and was arrested three times for assault-bodily injury offenses during the course of the Department's involvement with the family.

---

[3] Two of the five children involved in this appeal share the same initials. Thus, to refer to the children individually when necessary and to protect their identities, we shall refer to the children by the following pseudonyms and/or their ages at the time trial began: Robby – a nine-year-old boy; Annie – a seven-year-old girl; Abby – a six-year-old girl; Anthony – a four-year-old boy; and Lacey – a two-year-old girl. *See* TEX. R. APP. P. 9.8(2) (stating that in parental termination appeals, minors must be identified by alias unless court orders otherwise).

The trial court held the statutorily-required status and permanency hearings, and ultimately, the matter moved to a final hearing, during which the Department presented evidence to support terminating Mother's parental rights.

At the hearing, the trial court heard testimony from Ms. Pavon and Mother. Ms. Pavon testified Mother's parental rights should be terminated because Mother failed to comply with her service plan, failed to consistently visit her children, and never showed an ability or willingness to care for her children. Ms. Pavon detailed the parts of her service plan Mother failed to complete, specifically noting that Mother did not complete the domestic violence classes, which was the most important part of the service plan. Ms. Pavon further testified Mother regularly missed visitation appointments, which was extremely disappointing to the children. According to Ms. Pavon, the children missed Mother; however, each of the children were doing well in their current placements. The trial court also heard testimony from Mother, who offered no explanations for her actions.

At the conclusion of the hearing, the trial court terminated Mother's parental rights, finding she: (1) engaged in conduct or knowingly placed her children with people who engaged in conduct that endangered their physical or emotional well-beings, and (2) failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of her children. *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (E), (O) (West Supp. 2017). The trial court further found termination of Mother's parental rights would be in the children's best interests. *See id*. § 161.001(b)(2). Accordingly, the trial court rendered an order terminating Mother's parental rights. Thereafter, she perfected this appeal.

## ANALYSIS

On appeal, Mother does not challenge the evidence regarding the trial court's findings under section 161.001(b)(1) of the Texas Family Code ("the Code"). *See id.* § 161.001(b)(1)(E), (O). Rather, Mother argues the evidence is legally and factually insufficient to support the trial

court's finding that termination was in her children's best interests. *See id.* § 161.001(b)(2). According to Mother, the State ignored many of the *Holley* factors when presenting its case. In support of her position, Mother argues the State did not produce any evidence that she endangered her children or that any of the children's fathers believed her rights should be terminated. Mother further notes the evidence established her children missed her, and therefore, her children should be placed with her.

*Standard of Review*

A trial court may terminate a parent's right to a child only if it finds by clear and convincing evidence that the parent committed an act prohibited by section 161.001(b)(1) of the Code and termination is in the best interest of the child. *Id.* § 161.001(b). "Clear and convincing evidence" is defined as "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.* § 101.007. Courts require this heightened standard of review because termination of a parent's rights to a child results in permanent and severe changes for both the parent and child, thus, implicating due process concerns. *In re A.B.*, 437 S.W.3d 498, 502 (Tex. 2015). When reviewing the legal and factual sufficiency of the evidence, we apply the well-established standards of review. *See* TEX. FAM. CODE ANN. §§ 101.007, 161.206(a); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency); *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006) (factual sufficiency). In sum, an appellate court must determine whether the evidence is such that the trier of fact could reasonably form a firm belief or conviction that termination was in the child's best interest. *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In conducting a sufficiency review, we may not weigh a witness's credibility because it depends on appearance and demeanor, and these are within the domain of the trier of fact. *J.P.B.*,

180 S.W.3d at 573. Even when such issues are found in the appellate record, we must defer to the fact finder's reasonable resolutions. *Id.*

*Best Interests — Applicable Law*

In a best interest analysis, we apply the non-exhaustive *Holley* factors. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). In analyzing the evidence within the *Holley* framework, we note that evidence of each *Holley* factor is not required before a court may find that termination is in a child's best interest. *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2012). In other words, the absence of evidence as to some of the *Holley* factors does not preclude a fact finder from reasonably forming a strong conviction or belief that termination is in a child's best interest. *Id.* Moreover, in conducting our review of a trial court's best interest determination, we focus on whether termination is in the best interest of the child — not the best interest of the parent. *In re D.M.*, 452 S.W.3d 462, 468–69 (Tex. App.—San Antonio 2014, no pet.).

In addition to the *Holley* factors, we recognize there is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, promptly and permanently placing a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). Thus, to determine whether a child's parent is willing and able to provide the child with a safe environment, we also consider the factors set forth in section 263.307(b) of the Code. *Id.*

Additionally, evidence that proves one or more statutory grounds for termination may be probative to prove termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding same evidence may be probative of both section 161.001(1) grounds and best interest, but such evidence does not relieve State of burden to prove best interest). In conducting a best interest analysis, a court may consider in addition to direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet.

denied).  Finally, a trier of fact may measure a parent's future conduct by her past conduct in determining whether termination of parental rights is in the child's best interest.  *Id.*

*Application*

As indicated above, the Department presented two witnesses at the final hearing — Ms. Pavon, who was the Department caseworker, and Mother.  Ms. Pavon testified Robby, Abby, Annie, and Anthony expressed a desire to stay with their current placements because of Mother's inconsistent visits with them.  *See Holley*, 544 S.W.2d at 371–72; *see also K.M. v. Tex. Dep't of Family & Protective Servs.*, 388 S.W.3d 396, 405 (Tex. App.—El Paso 2012, no pet.) (discussing parent's failure to visit child as factor supporting decision that termination was in child's best interest).  The record reflects that at the beginning of the Department's involvement with the family, the Department scheduled bi-weekly visitations for Mother.  Ms. Pavon detailed how the children would anticipate Mother's arrival only to be disappointed when she did not show up.  Ms. Pavon testified that Abby in particular would be extremely sad each time Mother failed to attend a scheduled visitation.  Ms. Pavon stated that at one point Abby, Annie, and Anthony stated they missed Mother, but they have not recently asked to see her.  The record reflects Mother has not seen Robby, Abby, Annie, or Anthony in the past four months.  Ms. Pavon added that each of these children were comfortable with their placement families and appeared to be bonded with them.

With regard to two-year-old Lacey, Ms. Pavon testified she was extremely bonded to her biological father with whom she was placed.  Ms. Pavon testified Lacey was doing very well with her biological father, who was caring for all of her needs and keeping up to date with her medical appointments.  According to Ms. Pavon, Mother has not seen Lacey in the past three months.

Ms. Pavon also testified that with the exception of one item of clothing for Robby, Mother did not provide any support for her children.  *See* TEX. FAM. CODE ANN. § 263.307(b)(12) (whether

child's family demonstrates adequate parenting skills); *Holley*, 544 S.W.2d at 371–72. The evidence shows that at the time of trial, Mother was living in public housing and was not working, but planned to get a job. Mother testified she had not worked for the past two months, and before that time period, she was working in the housekeeping department for a local hotel. When asked whether she provided anything for her children while she was working, Mother testified she did not. When asked whether there was anything she could currently provide for her children, Mother stated, "nothing." *See Doyle v. Tex. Dep't of Protective & Regulatory Servs.*, 16 S.W.3d 390, 398 (Tex. App.—El Paso 2000, pet. denied) (holding that parent's failure to provide stable home and provide for child's needs contributes to finding that termination of parental rights is in child's best interest).

The evidence also shows Mother did not take care of her children's medical needs. *See* TEX. FAM. CODE ANN. § 263.307(b)(12); *Holley*, 544 S.W.2d at 371–72. Specifically, as to Annie, who has juvenile arthritis, Mother did not keep up with her doctor's appointments. *See* TEX. FAM. CODE ANN. § 263.307(b)(1) (child's age and physical and mental vulnerabilities). Ms. Pavon testified it was important for Mother to keep up with Annie's appointments so that a doctor could monitor Annie's development. Ms. Pavon testified that by failing to consistently take Annie to the doctor, Annie's pain was not being treated, causing her to suffer more pain than necessary. Mother admitted she understood Annie's condition caused her pain, but did not explain as to why she failed to keep up with Annie's appointments. Mother merely stated she did not have medical insurance, but planned on applying for Medicaid.

With regard to the emotional and physical danger to the children — now and in the future — there is evidence Mother continued to engage in domestic violence throughout the Department's involvement with the case. *See* TEX. FAM. CODE ANN. § 263.307(b)(7) (history of abusive or assaultive conduct by child's family); *id*. § 263.307(b)(11) (willingness and ability of child's

family to effect positive environmental and personal changes); *Holley*, 544 S.W.2d at 371–72; *see also In re S.R.*, 452 S.W.3d 351, 361 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) ("Domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment."). The record reflects the Department became involved with the family after receiving allegations that Mother was committing domestic violence against the father of one of the children. Mother admitted the Department became involved with her family because of her violent outbursts. Ms. Pavon testified that since the Department had become involved with the case, Mother had been arrested three times for assault-bodily injury offenses and failed to complete her domestic violence courses, which was the most important aspect of her service plan. *See* TEX. FAM. CODE ANN. § 263.307(b)(7); *id.* § 263.307(b)(10) (willingness and ability of child's family to seek out, accept, and complete services and cooperate with Department); *Holley*, 544 S.W.2d at 371–72. And although the evidence shows Mother completed her required parenting classes, the evidence also shows Mother failed to demonstrate any positive changes. By Mother's own testimony, she does not have anything to offer her children or any means to provide support for her children. Moreover, when asked about her past actions, Mother was unable to offer any excuses to explain her behavior. On the other hand, however, the evidence shows the children are being well cared for in their current placements and all their needs are being met.

Accordingly, after considering all the evidence in the light most favorable to the best interests finding, we conclude the trial court reasonably could have formed a firm belief or conviction that termination of Mother's parental rights was in her children's best interests. *See J.P.B.*, 180 S.W.3d at 573; *H.R.M.*, 209 S.W.3d at 108. Thus, we hold the evidence is sufficient to support the trial court's finding that termination of Mother's parental rights was in her children's best interests.

## CONCLUSION

Based on the foregoing, the order of the trial court is affirmed.


Marialyn Barnard, Justice