

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00824-CV

**IN THE INTEREST OF R.C.P., JR.**, R.I.P., M.E.P., and R.C.P., Children

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00040
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Sandee Bryan Marion, Chief Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: February 20, 2019

AFFIRMED

D.C. appeals the trial court's order terminating her parental rights to R.C.P., Jr., R.I.P., M.E.P., and R.C.P. The only issue presented on appeal is whether the evidence is legally and factually sufficient to support the trial court's finding that termination was in the children's best interest. We affirm the trial court's order.

### BACKGROUND

On January 8, 2018, the Texas Department of Family and Protective Services filed a petition to terminate D.C.'s parental rights to her four children. On October 16, 2018, a bench trial was held. At the time of the trial, the children were seven, four, nineteen months, and ten months. At the conclusion of the trial, the trial court terminated D.C.'s parental rights, and she appeals.

**STANDARD OF REVIEW AND STATUTORY REQUIREMENTS**

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence: (1) one of the predicate grounds in subsection 161.001(b)(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. §§ 161.001, 161.206(a); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). In this case, the trial court found clear and convincing evidence of the following five predicate grounds under subsection 161.001(b)(1) to terminate D.C.'s parental rights: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being; (3) constructively abandoned the children; (4) failed to comply with a court-ordered service plan; and (5) used a controlled substance in a manner that endangered the health or safety of the children and failed to complete a court-ordered substance abuse treatment program. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D), (E), (N), (O), (P); *see also In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (noting evidence that proves one or more statutory grounds for termination may be probative in proving termination is in the child's best interest). The trial court also found clear and convincing evidence that termination of D.C.'s parental rights was in the children's best interest.

We evaluate the legal and factual sufficiency of the evidence to support the trial court's findings under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex. 2002). Under these standards, "[t]he trial court is the sole judge of the weight and credibility of the evidence, including the testimony of the Department's witnesses." *In re F.M.*, No. 04-16-00516-CV, 2017 WL 393610, at *4 (Tex. App.—San Antonio Jan. 30, 2017, no pet.) (mem. op.).

**BEST INTEREST FINDING**

In determining the best interest of a child, courts apply the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody of the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d at 27. "A trier of fact may measure a parent's future conduct by his past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

The caseworker assigned to remove the children testified the Department received a report that D.C. choked the oldest child, R.C.P., Jr., at the Battered Women's Shelter. R.C.P., Jr. was six years old at the time. D.C. denied choking the child; however, the caseworker observed an injury below the child's eye and some bruising on his back. R.C.P., Jr. told the caseworker it was an accident; however, based on his investigation, the caseworker believed D.C. knowingly engaged in conduct that placed the children in danger of physical abuse. Because D.C. refused to agree to place the children with another person, the Department requested an exigent removal. At trial, D.C. continued to deny that she physically abused R.C.P., Jr. or that he had any injuries to his face.

The legal caseworker testified D.C. completed a psychological exam and attended some sessions with a therapist before she was unsuccessfully discharged. During her therapy sessions, D.C. denied being abusive to the children. D.C. also completed domestic violence classes; however, the service provider recommended additional sessions because D.C. continued to contact the children's father, who was the perpetrator of the domestic violence. D.C. did not complete the additional sessions. D.C. told the caseworker the children's father broke into her apartment, cut up her clothes, and was physically abusive towards her. Although D.C. attempted to get a protective order, she was seen engaging in contact with the children's father on the day he was served. At trial, D.C. denied that she was in contact with the children's father.

Although D.C. completed two drug tests, she had been sent for additional drug tests, including one ordered by the court, but failed to go. At trial, D.C. stated she "had other stuff to do." The caseworker testified D.C. told her that she had used drugs. *See In re L.G.R.*, 498 S.W.3d 195, 204 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting parent's drug use supports a finding that termination is in best interest of the child). D.C. was allowed to visit the children weekly, but the caseworker testified she missed the visits at least once a month, and she often needed others to intervene and help her manage all four children during the visits. *See K.M. v. Tex. Dep't of Family & Protective Servs.*, 388 S.W.3d 396, 405 (Tex. App.—El Paso 2012, no pet.) (discussing parent's failure to visit child as a factor supporting a finding that termination was in child's best interest).

The caseworker testified D.C. had failed to re-engage in counseling or domestic violence classes and stated D.C. was still almost at day one of her service plan although she was taking parenting classes. *In re S.B.*, 207 S.W.3d 877, 887-88 (Tex. App.—Fort Worth 2006, no pet.) (noting failure to comply with family service plan supports a finding that termination is in the best interest of the child). The caseworker testified D.C. had not demonstrated the ability to be

protective of her children because she continued to maintain contact with the children's father despite the domestic violence. *See In re T.L.B. Jr.*, No. 01–16–00806–CV, 2017 WL 1019520, at *11 (Tex. App.—Houston [1st Dist.] Mar. 16, 2017, no pet.) (mem. op.) (noting evidence of domestic violence in home even if not directed at the child is supportive of a trial court's best-interest finding).

D.C. also had not demonstrated a stable living arrangement. She had not provided the caseworker with proof of employment and was initially "living from sofa to sofa." *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (noting parent's inability to provide a stable home supports a finding that termination is in the best interest of the child). Although D.C. initially told the caseworker she did not want to live by the homeless shelter's rules, the caseworker believed D.C. had been residing at the homeless shelter for maybe a month before trial. At trial, D.C. testified she had been working as a waitress for a month but submitted her two-week notice because the job was stressful and required her to ride the bus to the other side of town.

All four children are placed together at a foster-to-adopt home and doing very well. *See In re Z.C.*, 280 S.W.3d 470, 476 (Tex. App.—Fort Worth 2009, pet. denied) (noting stability and permanence are important to upbringing of a child and affirming finding that termination was in child's best interest when child was thriving in current placement).

Having reviewed the record, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of D.C.'s parental rights was in the children's best interest.

CONCLUSION

The order of the trial court is affirmed.

Sandee Bryan Marion, Chief Justice